IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-cv-80877-Middlebrooks/Matthewman

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

BURT KRONER, on his own behalf and on
behalf of his minor child, J.K.;

ALYSON D. KRONER, on her own behalf
and on behalf of her minor child, J.K.;

WILLIAM KRONER,

EQUITY TRUST BAHAMAS, LTD in its
capacity as the trustee of the Kroner Family
Trust 2004 and Kroner Family 2007 Trust
Settlement B.

    Defendants.

## UNITED STATES' MOTION FOR SUMMARY JUDGEMENT

Under Fed. R. Civ. P. 56(a), Plaintiff, United States moves for summary judgment against all Defendants. As explained in the supporting memorandum, the United States requests that the Court require the Defendants to repatriate assets held by the Kroner Family Trust 2004 ("2004 Trust") and the Kroner Family 2007 Trust Settlement B ("2007 Trust"). The United States alleges that its federal tax liens attach to the corpus of the trusts and should be repatriated to satisfy Defendant Burt Kroner's $27 million tax debt. Thus, the Court should grant the United States's Motion for Summary Judgement.

WHEREFORE, the United States requests that the Court order the following:

1)      Equity must take all necessary steps to repatriate the remaining assets held by the

        Bahamas Trusts within into the Court's registry within 30 days of the Court's

        Order;

2)      Equity is prohibited from taking assessing any fees that are not billable before the

        Court's order requiring repatriation of the Bahamas Trusts;

3)      The Kroner Defendants must take all necessary steps as required by Equity to

        facilitate the repatriation of the assets held by the Bahamas Trusts within 30 days;

        and

4)      The Kroner Defendants are prohibited from requesting any distributions or

        exercising any powers related to the Bahamas Trusts after the date of the Court's

        Order.

Dated: February 27, 2026                Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        JOSHUA WU
                                        Deputy Assistant Attorney General, Tax Litigation Branch

                                        By:     /s/ *Nicholas S. Willingham*
                                                NICHOLAS S. WILLINGHAM
                                                Special Bar No. A5503138
                                                Tax Litigation Branch
                                                Civil Division, Department of Justice
                                                P.O. Box 14198
                                                Washington, D.C. 20044
                                                Telephone: (202) 307–6445
                                                Facsimile: (202) 514–4963
                                                Nicholas.Willingham@usdoj.gov

### MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR
### <u>SUMMARY JUDGMENT</u>

Defendant Burt Kroner owes the United States $27 million. And he has not voluntarily paid a penny to the IRS. This tax collection suit, at last, seeks to require the Defendants to repatriate assets Mr. Kroner has unlawfully shielded from the IRS for nearly 15 years. Over the course of two decades, Mr. Kroner has used every procedural tool to delay collection while he lived in a multimillion home, purchased luxury vehicles and took lavish vacations. Until the United States obtained a preliminary injunction [DE 74] limiting the Kroner Defendants' distributions from the Bahamas Trusts to $42,000 per month, Mr. Kroner received $76,000 per month from the Bahamas Trusts which are central to his scheme to avoid collection of his IRS debt.

Repatriation of the assets held by the Bahamas Trusts is necessary and appropriate for the enforcement of the internal revenue laws for three reasons. First, Mr. Kroner owes the United States over $27 million and lacks sufficient domestic assets to satisfy his tax debt. Second, federal tax liens attach to the assets held by the Bahamas Trusts under Florida law. Despite the trust deeds, the Bahamas Trusts are governed by Florida law, not Bahamian law. Finally, neither the Kroner Defendants nor Equity Trust Bahamas, Ltd. have raised affirmative defenses that prevent collection of the assets held by the Bahamas Trusts. Thus, the Court should order repatriation of the assets held by the Bahamas Trusts.

### <u>BACKGROUND</u>

Mr. Kroner has been fighting the IRS over his federal tax debt for nearly fifteen years. Back in October 2012, the IRS proposed assessing Mr. Kroner with $13 million of additional income taxes, accuracy-related penalties and interest. DE 77 at ¶ 20. At issue was nearly $25 million Mr. Kroner received from a former business associate, Mr. David Haring. DE 77 at ¶ 22;

1

*see also Kroner v. Comm'r of Internal Revenue*, 119 T.C.M. (CCH) 1507, 2020 WL 2844537, \*2 (T.C. 2020) (detailing transfers from Mr. Haring to Mr. Kroner or his entities). Mr. Kroner argued that the funds were gifts. *Kroner,* 2020 WL 2844537, \*4-7 The Tax Court later found that the funds were Mr. Kroner's income. DE 77 at ¶ 23. Including $5 million which was placed in the 2007 Trust. DE 77 at ¶¶ 16, 17.

After seven years, the IRS concluded its audit of Mr. Kroner. DE 77 at ¶ 21. The IRS issued a Notice of Deficiency that proposed assessing Mr. Kroner with additional income taxes and accuracy-related penalties for the years at issue. *Id*. Three months later, Mr. Kroner filed a petition with the Tax Court to challenge the proposed assessments. DE 77 at ¶ 22. Just two months later, Mr. Kroner earned $14 million from the partial sale of his business and transferred $10 million to the 2004 Trust. DE 77 at ¶¶ 9, 10.

After years of litigation, the Tax Court, in 2020, determined that Mr. Kroner was liable for additional income tax because the funds from Mr. Haring were income, not a gift. DE 77 ¶ 23. The IRS then assessed against Mr. Kroner a total of $9.2 million in income tax for the 2005 through 2007 tax years, plus interest. DE 77 at ¶ 25. But the Tax Court determined that Mr. Kroner was not liable for accuracy-related penalties on procedural grounds. DE 77 at ¶ 24. The IRS appealed the accuracy-related penalties decision to the Eleventh Circuit. DE 77 at ¶ 26. The Eleventh Circuit reversed. DE 77 at ¶ 27. On remand, the Tax Court determined that Mr. Kroner was liable for accuracy-related penalties, finding that Mr. Kroner failed to establish reasonable reliance on the advice of counsel. DE 77 at ¶ 28. The IRS then assessed Mr. Kroner with $1.8 million with accuracy-related penalties. DE 77 at ¶ 29.

Today, Mr. Kroner owes the IRS over $27 million and has millions stashed offshore in the Bahamas Trusts. Yet, the IRS has not received a penny. The Court should end that discrepancy by ordering repatriation of the assets held by the Bahamas Trusts.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). The nonmoving party, however, must not rest on mere allegations to overcome a properly supported motion for summary judgment. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997). The nonmoving party must produce "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). Thus, it is not enough for the nonmoving party to show that there is some factual dispute between the parties; the nonmoving party must show that the dispute "might affect the outcome of the suit under the governing law" to avoid summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). There are no material issues of fact to resolve. Thus, summary judgement is appropriate here.

## ARGUMENT

Repatriation of the assets held by the Bahamas Trusts is appropriate here for three reasons. First, the Court has the power to issue orders as necessary and appropriate for the enforcement of the internal revenue laws, including repatriation of the assets held by the Bahamas Trusts to settle Mr. Kroner's $27 tax debt. DE 77 at ¶ 30. Second, federal tax liens

3

attach to the assets held by the Bahamas Trusts under Florida law. Finally, neither the Kroner Defendants nor Equity have raised any valid affirmative defenses that prevent collection of the assets held by the Bahamas Trusts. The United States will address these points in turn.

## I.  The Bahamas Trusts Should be Repatriated

District courts have broad authority to issue repatriation orders. Under 26 U.S.C. § 7402(a), "district courts . . . have . . . jurisdiction. . . to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  The First Circuit has explained that § 7402(a) provides "district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957). A district court's full arsenal of powers under § 7402(a) "extends to ordering repatriation of funds held in foreign countries and foreign bank accounts to pay taxes owed to the federal government." *United States v. L & L Int'l, Inc.*, No. CV H-17-923, 2020 WL 168852, at *3 (S.D. Tex. Jan. 13, 2020) (Ordering repatriation of assets held by a Chinese bank under § 7402(a)); *see also United States v. Grant*, No. 00-08986-CIV, 2013 WL 1729380, at *4 (S.D. Fla. Apr. 22, 2013) (Ordering repatriation of assets held by an offshore trust under § 7402(a)). And in other contexts, district courts have ordered repatriation of foreign assets to satisfy a debt owed to the United States. *See United States v. Schwarzbaum*, No. 18-CV-81147, 2021 WL 4958307, at *4 (S.D. Fla. Oct. 26, 2021) (Ordering repatriation under the Federal Debt Collection Procedures Act); *United States v. Greene*, No. C-83-6107-MHP, 1984 WL 256, at *1 (N.D. Cal. Mar. 30, 1984) (Ordering repatriation of assets for a jeopardy assessment).

Ordering the Defendants to repatriate assets held by the Bahamas Trusts is necessary and appropriate. Mr. Kroner owes the United States $27 million. DE 77at ¶ 30. And he has not displayed any intention of voluntarily paying his tax debt. Instead, Mr. Kroner transferred his

assets offshore and filed for bankruptcy. DE 77 at ¶¶ 9, 10, 31. All while living a lavish lifestyle at the expense of payment of his taxes. Because Mr. Kroner will not voluntarily satisfy his debt, the Court should issue an order requiring the Defendants to repatriate the assets held by the Bahamian Trusts.

## II.    Federal Tax Liens Attach to the Bahamas Trusts

Federal tax liens arise upon assessment and attach to all property and rights to property of a taxpayer. 26 U.S.C §§ 6321, 6322. So when the IRS assessed Mr. Kroner's tax liabilities following the Tax Court's judgments, statutory liens arose in favor of the United States and attached to all Mr. Kroner's property and rights to property, including the Bahamas Trusts.

The reach of the federal tax lien is broad. As the Supreme Court explained, the term "property" in § 6321 "aims to reach 'every species of right or interest protected by law and having an exchangeable value.'" *Drye v. United States*, 528 U.S. 49, 55, (1999) (quoting *Jewett v. Commissioner*, 455 U.S. 305, 309, (1982)). Indeed, "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank of Jeanette, Pa., v. United States*, 326 U.S. 265, 267 (1945).

Despite its broad reach, § 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess*, 357 U.S. 51, 55 (1958). And so, courts must first look "to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within" § 6321. *Drye*, 528 U.S. at 58.

Federal tax liens attach to Mr. Kroner's interest in the Bahamas Trusts because: (1) the Trusts are governed by Florida Law; (2) Mr. Kroner is the settlor of the 2007 Trust; (3) the

spendthrift clauses are invalid against claims of the United States or for self-settled trusts; and (4) creditors may liquidate discretionary trusts that are self-settled.

Together, these undisputed facts establish that Mr. Kroner has a state law property interest in the Bahamas Trusts as the settlor. And federal tax liens attach to the assets held by self-settled asset protection trusts under federal law. *First Nw. Tr. Co. of S. Dakota v. Internal Revenue Serv.*, 622 F.2d 387, 390 (8th Cir. 1980) (Federal tax liens attach to assets held by a trust even when "the elements of a spendthrift trust are combined with provisions granting discretionary powers of distribution to the trustee[.]"); *see also United States v. Dallas Nat. Bank*, 152 F.2d 582, 585–86 (5th Cir. 1945) ("Although the legal title to the corpus of the trust estate is not in the taxpayer, and the corpus is not subject to alienation by her or to execution or levy by her creditors, nevertheless, it cannot be said that she has no rights whatsoever in the corpus of the property of the trust estate in the hands of the Trustee.") Thus, the IRS's federal tax liens attach to the assets held by the Bahamas Trusts.

### A.    Florida Law Governs the Bahamas Trusts

To begin, the Kroner Defendants should be estopped from arguing that Bahamian law governs the Bahamas Trusts. In bankruptcy court, Mr. Kroner consistently asserted Florida law to shield his assets from his creditors. In December 2024, Mr. filed an Amended Schedule of Exemptions where he claimed, under oath, that the Florida Trust Code allowed him to exempt the Bahamas Trusts from his bankruptcy estate. DE 77 at ¶¶ 34, 35; *see* Fla. Stat. Ann. §§ 736.0502; 736.0504. But those Florida Trust Code provisions Mr. Kroner cited are not Florida's dedicated bankruptcy exemptions. Instead, they are the Florida Trust Code's provisions governing discretionary and spendthrift trusts. The same provisions Mr. Kroner argues do not apply here.  Similarly, Mr. Kroner has raised Florida's homestead laws to protect the 2004 Trust's

65% interest in his home. DE 77 at ¶ 35. Now, Mr. Kroner claims that Bahamian law governs the Bahamas Trusts, not the Florida law. The Court should not allow Mr. Kroner to raise Florida law in bankruptcy court, and raise Bahamian law in this Court.

Even if the court considers the Defendants' argument that Bahamian law applies, Florida law governs the Bahamas Trusts. The Court is not obligated to honor Mr. Kroner's designation of Bahamian law as the governing law of the Bahamas Trusts. *See Dexia Credit Loc. v. Rogan*, 624 F. Supp. 2d 970, 975 (N.D. Ill. 2009) ("The fact that the trust documents specify Bahamian law does not necessarily mean, however, that this Court will honor that choice of law provision."). "Because the doctrine of trusts is governed by state law, the court must first ascertain which state's law applies before determining the standard of review." *Ekeblad v. Pirolli , Tr. of Russell A. Ekeblad Tr.*, 574 F. Supp. 3d 42, 46 (D.R.I. 2021). And federal courts should apply the law of the forum state when deciding choice of law disputes. *Barbee v. Goldstein (In re Reliance Fin. & Inv. Group, Inc.)*, Case No. 05-80625, 2006 U.S. Dist. LEXIS 82945, *19 ((S.D. Fla. Nov. 14, 2006) (applying Florida choice of law rules to decide the governing law of a trust). The Florida Trust Code has a choice of law provision that governs the parties' choice of law dispute. *See* Fla. Stat. Ann. § 736.0107; *see also In re Rensin*, 600 B.R. 870, 880 (Bankr. S.D. Fla. 2019) (looking to Florida law to decide whether Florida or Belize law governed an offshore trust that designated Belize law as the governing law).

Section 736.0107 of the Florida Trust Code says that "[t]he  . . . effect of the terms of a trust are determined by: (1) [t]he law of the jurisdiction designated in the terms of the trust, provided there is a sufficient nexus to the designated jurisdiction at the time of the creation of the trust or during the trust administration[.]" Fla. Stat. Ann. § 736.0107(1). But even if the Defendants can establish a sufficient nexus to the Bahamas, Florida law will apply if the trust

contains terms that violate Florida public policy. The flush language of § 736.0107 says: "[n]otwithstanding subsection (1) . . ., a designation in the terms of a trust is not controlling as to any matter for which the designation would be contrary to a strong public policy of this state." Under either the sufficient nexus or public policy test, the Bahamas Trusts are governed by Florida law. But the United States will focus on the public policy test because it controls the decision to apply Florida law even if a sufficient nexus is proven.

The Court should decide that the Bahamas Trusts violate public policy test. As noted above, "notwithstanding subsection (1), a designation in the terms of a trust is not controlling as to any matter for which the designation would be contrary to a strong public policy of this state." Fla. Stat. Ann. § 736.0107 (flush language). The Bahamas Trusts contain spendthrift clauses that violate Florida public policy. Fla. Stat. Ann. § 736.0505(1)(b). Florida law does not allow settlor-beneficiaries of a trust to enforce spendthrift clauses that attempt to shield creditors from collecting assets held by the trust (i.e., the Bahamas Trusts). *Id*. For this reason, Florida courts have long held that Florida law applies to offshore self-settled asset protection trusts under the public policy exception. *See In re Brown*, 303 F.3d 1261, 1266 (11th Cir. 2002) ("Florida law will not protect assets contained within a spendthrift trust to the extent the settlor creates the trust for her own benefit."); *see also In re Rensin*, 600 B.R. 870, 880 (Bankr. S.D. Fla. 2019) (applying Florida law to Belize asset protection trust); *see also In re Lawrence*, 251 B.R. 630, 642 (S.D. Fla. 2000) (upholding the bankruptcy court's decision to apply Florida law to a Mauritius asset protection trust). Florida law also says that spendthrift clauses are unenforceable against claims of the United States. Fla. Stat. Ann. § 736.0503(2)(c). Thus, Florida law applies because the Bahamas Trusts violate Florida public policy.

In a prior filing, Equity's attempt to argue that Bahamian law governs the Bahamas Trusts misses the mark. DE 44. Equity cites several Supreme Court cases for the following proposition:

> "application of the two-part test articulated in the *Craft/Drye/Bess* line of cases – (1) look to state law to determine what property rights the taxpayers has and (2) look to federal law to what state created rights qualify as property subject to the federal tax lien (i.e., the tax lien will apply to whatever property interest the taxpayer has under state law)."

DE 44 at pg. 4. The parties agree on this point. But then Equity argues that it "will establish that Mr. Kroner's property rights in the Trusts were created in the Bahamas, not Florida[]" and that "Florida law played no role whatsoever in determining what those property rights were under the governing Trust Deeds." *Id*. at pg. 5. But they provide no analysis about how they concluded that the Court should consider these facts in deciding whether Florida or Bahamian law governs the Bahamas Trusts. And their analysis fails to address cases like *Lawrence*, *Barbee* and *Rensin* where Florida courts have applied Florida law to offshore assets protection trusts like the Bahamas Trusts. Because Equity and the Kroner Defendants have both failed to identify the proper choice of law analysis, the Court should rule that Florida law governs the Bahamas Trusts.

## 1.    Expert Witness Testimony Is Not Relevant to the Parties' Choice of Law Dispute

Equity may argue that expert witness testimony about Bahamian law is necessary to decide the choice of law dispute. Under Fed. R. Civ. P. 44.1, a court may allow an expert witness to testify about foreign law. Rule 44.1 provides that "[i]n determining foreign law, the court may consider any relevant material or source, including testimony[.]" (emphasis added). This includes expert testimony. But because Rule 44.1 is permissive in nature, it does not require the Court to consider expert testimony at all. *See Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628 (7th Cir. 2010). Indeed, the Court "should use the best available sources." *Id*.

9

Here, the Bahamian law is available for the Court to inspect and interpret. *See Bahamas: Legislation Governing Offshore Asset Protection Trusts*, 2000 WL 243950 (Compiling the Choice of Governing Law Act of 1989 and the Trustee Act of 1998, among other Bahamian statutes). There is no dispute about the contents of Bahamian law. Bahamian law is published in English, which obviates a common need for expert testimony. *Bodum USA, Inc.*, 621 F.3d at 629. And if the Court is uncertain of the interpretation of those provisions, it "can use . . . secondary literature, such as treatises and scholarly commentary[,]" which are available here. *Id.* at 628. Put simply, the fact that Bahamian law is readily available (and undisputed by the parties) renders any testimony by an expert witness irrelevant and unrelated to a determination of foreign law. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, No. 04-20073-CIV, 2005 WL 5955701, at *6 (S.D. Fla. Aug. 17, 2005) (citing *Trinidad Foundry & Fabricating. Ltd. v. MV K.A.S. Camilla*, 966 F.2d 613, 615 (11th Cir.1992), for the proposition that evidence introduced under foreign law must be (1) relevant and (2) related to a determination of foreign law).

Because the parties do not dispute the potentially applicable Bahamian law, the Defendants seek to introduce expert testimony only to add their spin on Bahamian law. But as the Seventh Circuit explained in *Bodum USA*, the Court must discount any adversarial spin when determining foreign law. 621 F.3d at 628–29. And as the District Court of the District of Columbia observed, "the purpose of expert testimony . . . is to aid the court in determining the content of the applicable foreign law—not to apply it to the facts of the case." *Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 182 (D.D.C. 2006). The Court can make its determination of foreign law, if applicable, based on the statutory text without an expert witnesses' opinion of the law and application to this case.

As discussed above, expert witness testimony on Bahamian law is irrelevant to the choice of law dispute before the Court. Indeed, Bahamian law has no relevance to the question of whether the Bahamas Trusts violates Florida public policy. *See Rensin,* 600 B.R. at 880; *Lawrence,* 251 B.R. at 642; *Barbee,* 2006 U.S. Dist. LEXIS 82945 at *19. To reach on a decision about whether the Bahamas Trusts violate Florida law, the Court can just credit Mr. Kroner's testimony. DE 64, Ex. 9. at 47:13-19. Likewise, the Court may just examine the trust deeds to see that they contain spendthrift clauses that violate Florida public policy. DE 64, Ex. 6, pgs. 29, 42; DE 64 Ex. 7, pgs. 22-23, 32. And expert witness testimony on Florida law or trusts in general is not an appropriate topic for an expert witness. *Bodum USA, Inc.*, 621 F.3d at 629 ("No federal judge would admit 'expert' declarations about the meaning of Louisiana law[.]"). Put simply, the Court should not rely on Bahamian law because the choice of law dispute should be decided under Florida law. And Florida's choice of law statute does not require the Court to probe the contents of Bahamian law.

The Court should also ignore the Kroner Defendants' expert report, should they offer it at this stage. The *Bodum* court has explained that "[n]o federal judge would admit 'expert' declarations about the meaning of Louisiana law in a commercial case." *Bodum USA, Inc.*, 621 F.3d at 629. But that is exactly what the Kroner Defendants attempt to do here. They have submitted an expert report that contains opinions on the meaning and application of Florida trust law. Again, several cases in this district have been decided without the assistance of an expert report. *See Rensin,* 600 B.R at 880; *Lawrence,* 251 B.R. at 642; *Barbee,* 2006 U.S. Dist. LEXIS 82945 at *19. Thus, the Court should ignore the report because the parties' choice of law dispute can be resolved without an expert report.

11

### B.      Mr. Kroner is The Settlor of the 2007 Trust

Mr. Kroner is the settlor of the Bahamas Trusts. Mr. Kroner is listed as the settlor of the 2004 Trust. DE 77 at ¶ 2. And although Mr. Haring is listed as the settlor of the 2007 Trust, Mr. Kroner files annual returns as settlor of the 2007 Trust. DE 77 at ¶ 19. Mr. Kroner cannot tell the IRS that he is the settlor of the 2007 Trust and tell the courts he is not. The inquiry about Mr. Kroner's status as settlor of the 2007 Trust should end there.

But even if it doesn't, the Court should disregard Mr. Haring's designation as the settlor of the 2007 Trust because it was settled with Mr. Kroner's income. *Kroner I* at 25; *See also* DE 77 at ¶s 16, 17. The designation of a settlor has important implications under Florida law. Under Florida law, creditors can collect to full value of the settlor's interest in a spendthrift trust and a discretionary trust. Fla. Stat. Ann. § 736.0505(1)(b).

The Florida Trust Code adopts the definition of a settlor embraced by the Uniform Trust Code. *See* Uni. Trust Code § 103(15); Fla. Stat. Ann. § 736.0103(21) ("Settlor' means a person . . . who . . . contributes property to a trust."). The drafters of the Uniform Trust Code considered a situation like the one here:

> The fact that a person is designated as the 'settlor' by the terms of the trust is not necessarily determinative. For example, the person who executes the trust instrument may be acting as the agent for the person who will be funding the trust. In that case, the person *funding the trust, and not the person signing the trust instrument, will be the settlor*.

*See* Uniform Trust Code § 103(15) cmt (Emphasis added). Thus, the drafters recognized that the settlor may be the person funding the trust, rather than the person executing the documents as the settlor. And federal courts have recognized this principle, too, holding "that the person furnishing consideration for the creation of a trust is the settlor despite, in form, the trust is created by another." *Danielson v. Astrue*, No. 1:10-CV-125, 2011 WL 1485995, at *5 (N.D.W. Va. Mar. 28,

2011), *report and recommendation adopted sub nom.*, *Danielson v. Comm'r of Soc. Sec. Admin.*, No. 1:10CV125, 2011 WL 1483990 (N.D.W. Va. Apr. 19, 2011) (collecting cases). Mr. Kroner funded the 2007 Trust with $5 million of his income. Fla. Stat. Ann. § 736.0103(21); DE 77 at ¶¶ 16, 17. And thus, he is the settlor, no matter who executed the trust instruments.

Even if Florida law was not clear enough, Equity reports Mr. Kroner as the grantor of the 2007 Trust to the IRS on annual returns. While the Internal Revenue Code uses the term "grantor" instead of "settlor", the analysis is the same. *Kanter v. Comm'r*, 590 F.3d 410, 422 (7th Cir. 2009) ("The grantor of a trust (also known as the settlor) is the person who gratuitously transfers assets for the creation of the trust."). Both Equity and the Kroner Defendants admit that Mr. Kroner is reported as the settlor of the 2007 Trusts on annual returns to the IRS. DE 77 at ¶ 19. Despite admitting that Mr. Kroner is reported as the settlor of the 2007 Trust, the Kroner Defendants deny that Mr. Kroner is the settlor. DE 18 at ¶ 41. But the analysis under Florida law and the tax code is the same. Because Mr. Kroner's income settled the 2007 Trust, he is the settlor. He cannot tell the IRS that he is the settlor of the 2007 Trust but then tell the Court he is not the settlor without explanation.

### A.     The IRS May Collect Assets Held by a Self-Settled Spendthrift Trust

The Bahamas Trusts are unenforceable spendthrift trusts under Florida law. DE 77 at ¶¶ 4, 13. An enforceable spendthrift trust usually prevents the settlor or beneficiary from transferring their interest in the trust to creditors. But under Florida law, a spendthrift trust is unenforceable against federal tax liens. And even if a spendthrift trust was enforceable against the IRS, it is unenforceable when the settlor retains an interest in the trust as a beneficiary. For those reasons, the spendthrift clauses do not prevent collection of the Bahamas Trusts under Florida law.

Because Florida law applies, a spendthrift trust is unenforceable against IRS tax liens. The Florida Trust Code says that the enforcement of a spendthrift trust is invalid against "[a] claim of . . . the United States[.]" Fla. Stat. Ann. § 736.0503(2)(c). Indeed, the Fifth Circuit has held that the settlor "of a spendthrift trust cannot overcome . . . a spendthrift trust beneficiary's duty to pay tax." *In re Orr*, 180 F.3d 656, 663 (5th Cir. 1999). Put together, a spendthrift trust is unenforceable against the IRS under Florida law.

But even if a spendthrift trust were enforceable against the IRS, Florida law prohibits the enforcement of self-settled spendthrift trusts. The Florida Trust Code says that even if a trust contains a spendthrift clause, "a creditor . . . of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit." Fla. Stat. Ann. § 736.0505(1)(b); *see also Kraft v. Comm'r*, 142 T.C. 259, 267 (2014) (applying District of Columbia Trust Code provision that is nearly identical to the Florida Trust Code to hold that the IRS could collect from a self-settled trust with a spendthrift provision). This was the common-law rule as well. Before § 736.0505(1)(b) was enacted, the Eleventh Circuit held that "Florida law will not protect assets contained within a spendthrift trust to the extent the settlor creates the trust for her own benefit[.]" *Brown*, 303 F.3d at 1266. Thus, "when a settlor creates a trust for her own benefit and inserts a spendthrift clause, the entire spendthrift clause is void as to her creditors." *Id*. at 1267–68. And so, the Kroner Defendants cannot enforce a spendthrift trust against the IRS under Florida law.

### B.   The IRS May Collect Assets Held by A Discretionary Trust

Likewise, a settlor-beneficiary's interest in discretionary trusts may be collected by the IRS under Florida law. The Bahamas Trusts are also discretionary trusts. DE 77 at ¶¶ 5, 14. Florida has adopted the provisions of the Uniform Trust Code that govern discretionary trusts.

14

The drafters of the Uniform Trust Code have commented that a settlor-beneficiary cannot enforce discretionary trusts. Section 736.0505(1)(b), discussed above, adopts Uniform Trust Code § 505(a)(2). As the drafters of the Uniform Trust Code explained:

> If the trustee has discretion to distribute the entire income and principal to the settlor, the effect of this subsection is to place the settlor's creditors in the same position as if the trust had not been created.

*See* Uniform Trust Code § 505(a)(2) cmt. The Uniform Trust Code's rationale has been accepted by at least one federal court.

In *Dexia*, 624 F. Supp. 2d at 980, the court was presented with the following question about a potential conflict of the Florida Trusts Code: "section 736.0504 provides that creditors of a beneficiary may not reach the assets of discretionary trusts, whereas section 736.0505 permits creditors to reach the maximum amount of a trust that can be distributed to the settlor." *Id*. As the court ruled, "to the extent there is a conflict between sections 736.0504 and 736.0505, section 736.0505 controls." *Id*. at 980-81. In other words, the creditors of a settlor-beneficiary may reach the assets of a discretionary trust even if that trust also contains a spendthrift clause.

And the *Dexia* case reflects the common-law rule in Florida. This Court has held that:

> "[W]hen a person creates a discretionary trust for his own benefit, . . . 'his creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit, even though the trustee in the exercise of his discretion wishes to pay nothing to the beneficiary or to his creditors, and even though the beneficiary could not compel the trustee to pay him anything."

*Lawrence*, 251 B.R. at 642 (citations omitted). The *Lawrence* court speaks to the situation that exists here. Mr. Kroner is a settlor-beneficiary of the Bahamas Trusts. And Equity is permitted to distribute the entire principal of the Bahamas Trusts to Mr. Kroner. DE 77 at ¶¶ 6, 15. Thus, the IRS can collect the full value of the Bahamas Trusts even though they are discretionary trusts.

### III.    The Kroner Defendant's Bankruptcy Affirmative Defenses Fail as a Matter of Law

The Kroner Defendants raise three affirmative defenses related to Mr. Kroner's bankruptcy case. None of these affirmative defenses prevent collection of the Bahamas Trusts. First, the Kroner Defendants claim that the United States abandoned its federal tax lien by filing an unsecured claim in the bankruptcy case. But they have never offered any case law that the IRS can abandon its tax lien by filing an unsecured claim in bankruptcy. Nor can they. It is undisputed that the IRS did not file an NFTL against Mr. Kroner before he filed for bankruptcy. So, it would have been improper for the IRS to file a secured claim in the bankruptcy case. *United States v. TM Bldg. Prods.*, Ltd., 231 B.R. 364, 371 (S.D. Fla. 1998) ("If. . . a [NFTL] is not recorded before the petition, the claims are unsecured claims[.]"). In short, the IRS complied with bankruptcy law by filing an unsecured claim against Mr. Kroner's bankruptcy estate.

But the lack of an NFTL does not prevent collection, because Mr. Kroner elected to exclude the Bahamas Trusts from his bankruptcy estate. DE 77 at ¶ 35. Indeed, several courts have held that excluded assets, like the Bahamas Trusts, are subject to an IRS statutory tax lien. *See In re Rich*, 197 B.R. 692, 695 (Bankr. N.D. Okla. 1996) ("Property excluded from the estate cannot be claimed or allowed as exempt property and would be subject to an unfiled tax lien."); *see also In re Rios*, 649 B.R. 30, 36 (Bankr. E.D. Wis. 2023) (despite lack of NFTL, IRS statutory lien attaches to debtor's excluded Social Security benefits.); *see also United States v. Rogers*, 558 F. Supp. 2d 774, 788 (N.D. Ohio 2008) (despite lack of NTFL, IRS statutory lien survived debtor's bankruptcy discharge and attached to debtor's excluded pension plan.). Thus, the IRS's statutory tax liens attach to excluded assets, like the Bahamas Trusts.

Second, the Kroner Defendants argue that the IRS's statutory liens are void under 11 U.S.C. § 506(d). But "[s]ection 506(d) of the Code cannot be used to avoid a lien on property

which is not *property of the estate*." *In re Catalano*, 510 B.R. 654, 658 (Bankr. M.D. Fla. 2014) (emphasis added); *see also* 11 U.S.C. § 551 ("[A]ny lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to *property of the estate*.") (emphasis added). But again, the Bahamas Trusts are not part of the estate because Mr. Kroner elected to exclude the Bahamas Trusts from his bankruptcy estate. DE 77 at ¶ 35. Mr. Kroner cannot avoid the IRS's statutory tax lien on assets that he excluded from his bankruptcy estate.

Finally, the Kroner Defendants argue that confirmation of a chapter 11 plan would extinguish any federal tax lien. To begin, Mr. Kroner has not confirmed a chapter 11 plan so this defense is not ripe for review. *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (citations omitted) (To satisfy the requirements of Article III, the question before the Court cannot be "based upon the possibility of a factual situation that may never develop."). So, this defense should not be considered until Mr. Kroner can confirm a chapter 11 plan.

That said, confirmation of a chapter 11 plan and a subsequent discharge does not have an impact on the IRS's ability to initiate *in rem* proceedings against a taxpayer-debtor like Mr. Kroner. The Supreme Court has held that a bankruptcy discharge only prevents creditors from collecting assets against a debtor *in personam*. *Johnson v. Home State Bank*, 501 U.S. 78, 79, (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—an *in personam* action—while leaving intact another—an *in rem* action."). But the United States' action to collect assets held by the Bahamas Trusts is a quasi *in rem* action. *Hanson v. Denckla*, 357 U.S. 235, 246 (1958) n.12 ("A judgment *in rem* affects the interests of all persons in designated property. A judgment quasi *in rem* affects the interests of particular persons in designated property.") Thus, the IRS can still enforce its statutory tax lien against the assets held by the Bahamas Trusts despite confirmation of a chapter 11 plan and discharge.

### IV.     Equity Raises Affirmative Defenses Are Unsupported by Law

Equity has not raised a valid affirmative defense. As a threshold matter, Equity has raised three defenses that are not recognized as affirmative defenses. "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999). Thus, "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Equity has raised three invalid affirmative defenses in defense of the United States' claims.

First, Equity claims the Complaint fails to state a claim upon which relief can be granted. But failure to state a claim is not an affirmative defense. *Delgado v. Carnival Corp.*, 640 F. Supp. 3d 1286, 1290 (S.D. Fla. 2022) ("Courts in this District routinely strike 'failure to state a claim' defenses labeled as 'affirmative defenses,' because they do not constitute valid affirmative defenses."). But even if the failure to state a claim was an affirmative defense, the United States has stated a claim under 26 U.S.C. § 7402. So, this defense is meritless.

Second, Equity argues that the United States' claims may be a barred by the terms of the 2004 and 2007 Trusts. But this "affirmative defense" just points to a defect in our prima facie case, it is not an affirmative defense. Third, Equity similarly raises the affirmative defense that Equity and the Bahamas Trusts are governed by Bahamian law. But again, the argument that Bahamian law governs the Bahamas Trusts is resolved by the merits of the case. It is not an affirmative defense. Although Equity is a Bahamian corporation, the Court has personal jurisdiction over Equity. Fla. Stat. Ann. §§ 736.0202(2)(a)(3), 736.0202(b). And because the Court has personal jurisdiction over Equity, the Court can enforce its orders. *United States v.*

*First Nat. City Bank*, 379 U.S. 378, 384 (1965) ("Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, whether the property be within or without the United States."). So, the fact that Equity is a Bahamian corporation is not an affirmative defense.

That leaves Equity with only three remaining affirmative defenses which are unsupported by the facts and the law. First, Equity reiterates the Kroner Defendant's bankruptcy defenses which are addressed above. Second, Equity asserts a statute of limitations defense without any explanation about its applicability. The IRS has 10 years to collect a tax after assessment. 26 U.S.C. § 6502(a)(1) ("[T]he assessment of any tax . . . may be collected . . . by a proceeding in court, . . . if . . . the proceeding begun—(1) within 10 years after the assessment of the tax[.]"). Mr. Kroner's income tax liabilities were assessed on November 11, 2020 and his accuracy-related penalties were assessed on August 19, 2024. DE 77 at ¶¶ 25, 29. The United States commenced this suit on January 10, 2025—well within the statute of limitations on collection of a tax debt.

Equity also raises laches as an affirmative defense. But laches is not recognized as an affirmative defense in tax collection suits. *See United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("[T]he United States is not . . . subject to the defense of laches in enforcing its rights."); *see also Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973) ("[I]n the enforcement of Government tax claims, the United States is not barred by a laches defense.").

Finally, Equity raises a failure to mitigate damages affirmative defense. But tax collection suits do not sound in tort or contracts. So, damages, and the corresponding duty to mitigate damages, is not an affirmative defense. *S. C. Loveland, Inc. v. E. W. Towing, Inc.*, 608 F.2d 160,

167 (5th Cir. 1979) ("In principle one is required to avoid or mitigate damages only after the defendant has committed a tort[.]"). Thus, Equity lacks any valid affirmative defense.

<u>**CONCLUSION**</u>

The Court should order the Defendants to repatriate the funds held by the Bahamas Trusts. The United States has shown that repatriation is appropriate in this case given Mr. Kroner's substantial tax liability and that his domestic assets are not enough to satisfy his substantial tax debt. The Bahamas Trusts should be repatriated because federal tax liens attach to Mr. Kroner's interests in the trusts. Indeed, the Bahamas Trusts are governed by Florida law which does not enforce asset protection trusts.

The defenses the defendants have raised are meritless. Mr. Kroner's decision to exclude the Bahamas Trusts from his bankruptcy estate forecloses any argument that his bankruptcy case prevents collection of the assets held by the Bahamas Trusts. Nor does Equity offer any affirmative defense that can defeat the United States' repatriation claims. Most of Equity's stated affirmative defenses are not affirmative defenses at all. Instead, they attempt, but fail, to attack the merits of the case. And Equity's laches and statute of limitations also miss the mark. Thus, the Court should order repatriation of the assets held by the Bahamas Trusts.

Dated: February 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

By:    /s/ *Nicholas S. Willingham*
NICHOLAS S. WILLINGHAM
Special Bar No. A5503138
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 14198
Washington, D.C. 20044
Telephone: (202) 307–6445
Facsimile: (202) 514–4963
Nicholas.Willingham@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on February 27, 2026, a true and correct copy of this document was filed electronically through the Court's CM/ECF filing system, which will serve a copy of this filing on all counsel of record.

/s/ *Nicholas S. Willingham*
NICHOLAS S. WILLINGHAM
Trial Attorney, Tax Litigation Branch
U.S. Department of Justice