**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,                          Case No. 9:25-cv-80877

      Plaintiff,

v.

BURT KRONER, on his own behalf and on behalf
of his minor child, J.K.;

ALYSON D. KRONER, on her own behalf and on
behalf of her minor child, J.K.;

WILLIAM KRONER;

EQUITY TRUST BAHAMAS, LTD.,
in its capacity as the trustee of the Kroner Family Trust 2004
and Kroner Family 2007 Trust Settlement B.

      Defendants

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION
FOR SUMMARY JUDGMENT**

Defendants Respond to the United States' Motion for Summary Judgment.

**INTRODUCTION**

The government asks this Court to seize the entire corpus of two Bahamian trusts to satisfy

Burt Kroner's tax debt. It must prevail on each of three sequential and independent legal questions.

On any one of these three questions, a genuine dispute of material fact or a controlling legal

deficiency precludes summary judgment.

First, the federal tax liens did not attach to the trust assets. The Supreme Court's framework

requires courts to look to the jurisdiction where the taxpayer's property rights were created. That

jurisdiction is the Bahamas, not the law of any state the government selects for strategic advantage.

Under Bahamian law a discretionary beneficiary holds no attachable property interest in

undistributed trust assets. Even under Florida law, the government cannot establish that Mr. Kroner is the settlor of the 2007 Trust, which was funded entirely by a third party, David Haring. And with the Court acknowledging both of those truths, § 736.0505 is a remedial creditor statute that defines what creditors may reach. It does not create a present property interest where none otherwise exists.

Second, even assuming a lien attached, the government cannot establish that any enforceable lien survived the bankruptcy proceedings. The IRS filed its entire claim as general unsecured, checked "No" to the secured claim question, identified no collateral, and never asserted a lien in the bankruptcy case. The agreed stay relief order that followed is a purely procedural instrument that permitted the IRS to file suit; it did not adjudicate lien validity, as the bankruptcy court explicitly confirmed. The government accepted exclusion of the trusts from the estate on the basis of Bahamian transfer restrictions, then insists on Florida law for purposes of lien attachment. Invoking the trust structure when convenient and then discarding it defeats its theory.

Third, even if the government prevailed on both lien attachment and lien survival, full repatriation of the entire trust corpus is not the appropriate remedy. Repatriation under 26 U.S.C. § 7402(a) is a discretionary equitable remedy, not an entitlement. Burt Kroner cannot compel distributions, cannot remove or replace the trustee, and cannot override Bahamian statute, which expressly authorizes the trustee to decline foreign court orders. Each of these arguments independently defeats summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See

*Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**ARGUMENT**

## I.    THE GOVERNMENT'S FEDERAL TAX LIENS DID NOT ATTACH TO THE BAHAMAS TRUST ASSETS

### A.    The Supreme Court's Federal Tax Lien Framework Requires Application of Bahamian Law

The government's choice of law argument rests on a fundamental analytical error. Rather than applying the Supreme Court's framework for federal tax lien cases, it relies on the Florida Trust Code's choice of law provision, Fla. Stat. § 736.0107, and a line of bankruptcy and diversity cases applying state-law. That approach is wrong as a matter of controlling law.

#### 1.    The Craft/Drye/Bess Framework Is the Controlling Choice of Law Rule in Federal Tax Lien Cases

In *United States v. Bess*, 357 U.S. 51, 55 (1958), the Supreme Court explained that the federal tax lien statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." In *Drye v. United States*, 528 U.S. 49, 58 (1999), the Court established a two-step framework: courts must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property.'"

Critically, the "state law" to which the Supreme Court directs courts is not the law of any state the government selects for strategic purposes. It is the law of the jurisdiction where the taxpayer's property rights were created. *Nineveh Investments Limited v. United States*, 2019 WL 3816834, at 11–12 (E.D. Pa. 2019) — the only court to apply *Craft/Drye/Bess* to a Bahamian discretionary trust — held that Bahamian law governed.

3

There is no genuine dispute that Mr. Kroner's rights in the 2007 Trust were created in the Bahamas, and the 2004 Trust was created in Nevis but later transferred to the Bahamas. Both trust deeds designate Bahamian law as the governing law. ECF 84 ¶ 65. The 2004 Trust Deed was amended in 2013 to provide that "[t]he laws of the Commonwealth of The Bahamas shall be the Proper Law of this Settlement." ECF 84 ¶ 65; ECF No. 81-3, July 25, 2013 Deed Regarding Change of Proper Law (the "July 25, 2013 Deed"). The 2007 Trust was settled in the Bahamas and has been governed by Bahamian law since its creation. ECF 84 ¶¶ 18, 65. Both Bahamian trusts are administered by Equity Trust Bahamas, Ltd., an institutional Bahamian trustee. ECF 84 ¶ 65. Florida played no role in defining the rights Mr. Kroner holds as a beneficiary.

The governing law clause of the 2007 Trust is not a mere expression of intent. It is a mandatory, operative provision stating that the trust "is established under the laws of The Commonwealth of The Bahamas and shall be construed and take effect according to the law of The Commonwealth of The Bahamas." ECF 84 ¶¶ 18, 65. The government's characterization of this clause as merely "stat[ing] an intention" misreads both the instrument and the controlling statute. TCGLA § 4(2) provides that "[a] term of a trust expressly declaring that the laws of The Bahamas shall govern the trust is valid, effective and conclusive regardless of any circumstance." ECF 84 ¶ 56. The government's argument that Maynard's testimony should be disregarded is wrong. He does not merely describe Bahamian statutes, he testifies to how Bahamian courts apply them and what obligations a foreign repatriation order would impose on Equity Trust, precisely the kind of expert testimony courts rely on to determine foreign law under Fed. R. Civ. P. 44.1.

## 2. The Government's Reliance on the Florida Trust Code and Bankruptcy Cases Is Misplaced

The government's choice of law argument relies entirely on Fla. Stat. § 736.0107 and a series of cases: *In re Brown,* 303 F.3d 1261, 1266 (11th Cir. 2002), *In re Rensin,* 600 B.R. 870,

880 (Bankr. S.D. Fla. 2019), *In re Lawrence,* 251 B.R. 630, 642 (S.D. Fla. 2000), and *Barbee v. Goldstein (In re Reliance Fin. & Inv. Group, Inc.),* Case No. 05-80625, 2006 U.S. Dist. LEXIS 82945, 19 (S.D. Fla. Nov. 14, 2006) for the proposition that Florida's public policy exception overrides the trusts' Bahamian law designation. This argument fails for two independent reasons.

None of the government's cases is a federal tax lien case. All arose in bankruptcy or diversity proceedings and applied state choice-of-law rules — the very framework that the *Craft/Drye/Bess* federal common law rule displaces.

### 3. Even Under Florida's Choice of Law Analysis, Florida Law Does Not Apply

Even if the Court were to conduct a § 736.0107 analysis, the result is the same. Section 736.0107 provides that the law designated in the trust governs if there is a sufficient nexus to the designated jurisdiction. The record here establishes that nexus: both trusts designate Bahamian law (ECF 84 ¶¶ 18, 65), are administered by a Bahamian trustee in the Bahamas (ECF 84 ¶ 65), and the 2004 Trust's governing law was formally amended to Bahamian law in 2013, with the trust assets in the Bahamas since 2015. ECF 84 ¶ 65.

The government argues the public policy exception in § 736.0107's flush language overrides that nexus because the trusts contain spendthrift clauses that violate Florida public policy. But the public policy exception requires a particularized showing regarding the circumstances of the trusts' creation, purpose, and administration. The government has not made that showing because application of the public policy exception turns on factual and legal determinations that cannot be resolved on a disputed record at summary judgment.

Moreover, the § 736.0107 public policy exception cannot override TCGLA § 4(2), which makes the Bahamian governing law designation "valid, effective and conclusive regardless of any

circumstance." ECF 84 ¶ 56. Florida's public policy exception operates within the Florida trust system; it does not reach a foreign statute that forecloses the inquiry at the threshold.

### 4.   The Judicial Estoppel Argument Fails

The government argues that Mr. Kroner is judicially estopped from asserting Bahamian law because he invoked Florida law in his bankruptcy schedules. That argument fails because judicial estoppel in the Eleventh Circuit requires, among other things, that the party took an inconsistent position under oath in a prior proceeding and that the inconsistent positions were calculated to make a mockery of the judicial system. *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (en banc). Neither element is satisfied here. The bankruptcy court expressly declined to rule on the governing law of the trusts or the validity of any IRS lien.  ECF 84 ¶¶ 45–46. As Judge Mora stated at the September 10, 2025 hearing: "I didn't determine the validity of that lien . . . That issue . . . is for somebody with a higher pay grade, the District Court judge, to make that determination whether you do have it or you don't." ECF 84 ¶ 46.

The government's reliance on Mr. Kroner's amended Schedule C is similarly misplaced. That amendment was filed as a procedural precaution because bankruptcy forms do not provide a mechanism to identify property excluded from the estate as distinct from exempt property. Mr. Kroner's amended Schedule C expressly stated, in a sworn footnote, that the trust interest listings were "not to be construed as the Debtor asserting that such interests are property of the estate and therefore requiring a claim of exemption," and that the exemptions were listed "in an abundance of caution" only. ECF 84 ¶¶ 34–35, 61.

Critically, the Florida statutes Mr. Kroner actually cited on amended Schedule C, §§ 736.0502 and 736.0504, are the beneficiary-protective provisions applicable to any trust

beneficiary, not § 736.0505, the self-settled trust provision on which the government's entire theory depends. ECF 84 ¶ 62. See Arguments I.C.2 and II.D, infra.

**B.     Kroner Is Not the Settlor of the 2007 Trust — A Genuine Factual Dispute Precludes Summary Judgment**

Even if the Court applies Florida law, the government must establish as a matter of law that Mr. Kroner is the settlor of the 2007 trust. It cannot do so.

### 1.     The 2007 Trust Names David Haring as Settlor, and His Sworn Testimony Confirms It

The 2007 Trust Settlement Deed expressly identifies David Haring as the settlor. ECF 84 ¶ 67. He executed the deed and transferred $2.5 million on July 16, 2007 and an additional $2.5 million on July 19, 2007. ECF 84 ¶¶ 16–17, 59. Mr. Haring has also submitted a sworn declaration stating that those transfers were voluntary gifts made "without obligation." ECF 84 ¶ 60.

The government's contrary argument — that a Tax Court finding of income conclusively establishes settlor status under Florida trust law — conflates two distinct legal inquiries. The Tax Court determined that the Haring transfers constituted taxable income to Mr. Kroner for federal income tax purposes. That determination was made under the Internal Revenue Code. It says nothing about who, under Florida or Bahamian trust law, "gratuitously transferred assets for the creation of the trust." *Kanter v. Commissioner*, 590 F.3d 410, 422 (7th Cir. 2009), the government's own authority, defines the settlor as "the person who gratuitously transfers assets for the creation of the trust." Under that definition, the settlor is Mr. Haring: he is the person who executed the deed and transferred the funds. The Tax Court resolved a different question — whether the transfers were taxable income to Kroner under I.R.C. § 102 — an inquiry conducted from the recipient's perspective that says nothing about who holds legal settlor status under trust law.

**2.   The UTC Commentary Does Not Resolve the Dispute in the Government's Favor**

The government relies on commentary to Uniform Trust Code § 103(15) for the proposition that the person "funding" the trust, rather than the person signing the instrument, is the settlor. But that commentary contemplates a specific scenario: where the signing party acts as the *agent* of the funding party. UTC § 103(15) cmt. ("the person who executes the trust instrument may be acting as the agent for the person who will be funding the trust"). There is no evidence that Mr. Haring acted as Mr. Kroner's agent. To the contrary, Mr. Haring's declaration asserts independent, gratuitous action. ECF 84 ¶ 60.

Moreover, even under the government's theory, the question of who "furnished consideration" for trust purposes is a factual inquiry that turns on the intent and circumstances of the transfer. Mr. Haring's sworn testimony that he acted voluntarily and without obligation creates a genuine factual dispute that cannot be resolved as a matter of law. Defendants' trust law expert, Leslie A. Share, Esq., opines that because Mr. Haring established and funded the 2007 Trust, Mr. Kroner is not the settlor for purposes of Florida or Bahamian trust law. ECF 84 ¶ 54. The government's reliance on Equity's IRS grantor trust reporting is similarly misplaced: that classification is determined by the IRC's grantor trust rules for federal income tax purposes and says nothing about settlor status under trust law.

**C.   Even Assuming Florida Law and Settlor Status, No Attachable Property Interest Exists in the Trust Corpus**

The government's motion fails at the third and final step even if it prevails on the first two. Under *Drye*, the Court must first identify the precise nature of Mr. Kroner's state-law property rights before determining whether those rights constitute "property" for purposes of 26 U.S.C. § 6321.

### 1.   Section 736.0505 Is a Creditor Remedy Statute, Not a Property-Definition Statute

The government's entire property interest argument rests on Fla. Stat. § 736.0505(1)(b), which provides that "a creditor . . . of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit." The government treats this as establishing that the trust corpus is Mr. Kroner's property. It does not.

Section 736.0505 defines what a creditor may reach. It is a remedial provision governing the extent of creditor access, not a definition of what rights the taxpayer holds in the property. Under *Drye*, the Court must answer the property rights question first, looking to state law's definition of what the taxpayer actually owns or is entitled to, before asking whether those rights are reachable by a federal lien. A state statute expanding the remedies available to creditors does not itself create the underlying property interest that federal lien law requires. To hold otherwise would allow the state creditor remedy to swallow the *Drye* analysis entirely, a result the Supreme Court did not intend. *Kraft v. Commissioner*, 142 T.C. 259 (2014), is distinguishable: it applied the District of Columbia Trust Code to a domestic trust, involved no choice-of-law dispute, no foreign institutional trustee, and no governing-law designation under a foreign statute. The *Craft/Drye/Bess* framework the government ignores in this case was neither raised nor addressed.

### 2.   Under Both Bahamian and Florida Law, a Discretionary Beneficiary Holds No Present Property Interest in Undistributed Trust Assets

The 2004 and 2007 Trusts are discretionary. The 2004 Trust Deed states: "This is a discretionary trust and, except as otherwise provided herein, no Beneficiary hereunder has any ascertainable right, title, or interest to any portion of the Trust Estate." ECF 84 ¶ 48. The 2007 Trust Deed provides that the trustee's discretions "shall . . . be absolute." ECF 84 ¶ 49. The government itself admits both trusts are discretionary. ECF 77 ¶¶ 5, 14.

Under Bahamian law, as established by the expert report of Dr. Peter Maynard, a beneficiary of a discretionary trust "does not have any property interest in the trust assets themselves but, instead, has only a right to request distributions that the trustee in its discretion may grant or deny." Ex. 5 (Expert Report of Peter D. Maynard KC, PhD) at 11; ECF 84 ¶ 58. See *Tan Chi Fang et al. v. HM Attorney General*, [2014] JRC 128 ¶ 33.  See Fla. Stat. §§ 736.0502, 736.0504; *In re Wilson,* 140 B.R. 400, 407 (N.D. Tex. 1992).

### 3. The Federal Tax Lien Cases Confirm That Liens Attach Only to Distributions, Not to the Corpus of a Discretionary Trust

The government's own cited authorities confirm the correct framework. In *First Northwest Trust Co. of South Dakota v. IRS*, 622 F.2d 387, 390 (8th Cir. 1980), the court acknowledged the established rule: "'[i]f the taxpayer's rights are subject to the discretion of the trustee, the tax collector can reach whatever the trustee *elects to distribute*.'" (quoting Plumb, Federal Liens and Priorities Agenda for the Next Decade II, 77 Yale L.J. 605, 617 (1968).) (emphasis added). Not the corpus.  In *United States v. Dallas National Bank*, 152 F.2d 582 (5th Cir. 1945), also cited by the government, the distributions at issue were *mandatory* disbursements from a fixed revenue stream, not discretionary distributions. A subsequent bankruptcy court correctly distinguished *Dallas National Bank* on precisely this ground. See *In re Wilson*, 140 B.R. 400, 405 (N.D. Tex. 1992) (emphasis in original). The *Wilson* court then addressed a discretionary trust directly and held: "The IRS must await a distribution from the Trustee." *Id.* at 407.

The Supreme Court's decision in *North Carolina Department of Revenue v. The Kimberley Rice Kaestner 1992 Family Trust*, 588 U.S. 262, 270 (2019), provides further confirmation. Where trust beneficiaries "have no right to demand" trust income and are "uncertain ever to receive it," the income is not their property. The government, notably, conceded in *Nineveh* that "discretionary

beneficiaries, even those who are also settlors . . . do not have any proprietary interest in a trust's assets" under Bahamian law. *Nineveh*, 2019 WL 3816834, at 5.

## II.     THE GOVERNMENT HAS NOT ESTABLISHED THAT ANY FEDERAL TAX LIEN SURVIVED THE BANKRUPTCY PROCEEDINGS IN ENFORCEABLE FORM

### A.     The IRS Filed Its Claim as Wholly Unsecured, and the Legal Consequences of That Election Are Not Settled as a Matter of Law

The proof of claim itself is the starting point for this argument. When the IRS filed Proof of Claim No. 2-2 in Mr. Kroner's bankruptcy case, it characterized its entire claim as unsecured. The claim form asks: "Is all or part of the claim secured?" The IRS checked "No." ECF 84 ¶ 43.

The government's explanation is that without a pre-petition Notice of Federal Tax Lien, it had no choice but to file an unsecured claim. See *United States v. TM Bldg. Prods., Ltd.*, 231 B.R. 364, 371 (S.D. Fla. 1998). That explanation is inconsistent with the IRS's position in other cases and ignores the plain language of the proof-of-claim form. *See, e.g., In re Rios*, 649 B.R. 30, 32 (Bankr. E.D. Wi. 2023) (IRS did not record a notice of federal tax lien but nevertheless filed a secured proof of claim that expressly referenced the statutory lien arising on assessment of a tax liability). Moreover, that explanation does not resolve the broader legal question of whether that filing, combined with the IRS's overall bankruptcy posture, affected its ability to later assert in rem rights against excluded assets. That is a distinct legal question, and the answer is not settled as a matter of law.  Courts have recognized that a creditor's unsecured election in bankruptcy can forfeit subsequent secured rights. *See In re Taylor*, 280 B.R. 711, 716 (Bankr. S.D. Ala. 2001); *In re Krahn*, 124 B.R. 78, 81 (Bankr. D. Minn. 1990).

### B.     The Agreed Stay Relief Order Did Not Adjudicate the Validity or Attachment of Any Lien

The government's motion treats the agreed stay relief order as if it established the validity of its lien. It did not. The order the parties submitted to the bankruptcy court, and which Judge

11

Mora entered on July 10, 2025, contains only three operative provisions: the Bahamas Trusts are excluded from the estate; the IRS is permitted to file a lien enforcement suit in district court; and the IRS is directed to withdraw its estate-property-based plan objections. ECF 84 ¶ 37.

There is no finding in the order that the IRS holds a valid lien. There is no finding that any lien attaches to the trust assets. There is no finding about choice of law or settlor status, or Kroner's property rights in the trusts.

The bankruptcy court confirmed this at the September 10, 2025 hearing, stating that the stay relief order "simply acknowledged that the trust res was not property of the bankruptcy estate" and that it did not "determine the validity of that lien." ECF 84 ¶ 46. The court was equally clear that no collateral estoppel arose from the stay relief proceedings: "I don't think that there is collateral estoppel on that issue, because I don't recall deciding it."  Id.

The government's contrary argument — that the Defendants consented to stay relief in a motion where the IRS was required to show a colorable interest, and therefore implicitly conceded lien validity — was raised at the hearing and rejected by the court. ECF 84, Ex. 3 (Bankruptcy Hearing Transcript, Sept. 10, 2025) at 24:6–27:19.

## C.     The Exclusion of the Trusts from the Bankruptcy Estate Does Not Establish Lien Attachment as a Matter of Law

The government's primary legal argument on lien survival is that because Mr. Kroner excluded the Bahamas Trusts from his bankruptcy estate, they remain subject to the IRS's statutory tax lien as non-estate property, citing *In re Rich*, 197 B.R. 692 (Bankr. N.D. Okla. 1996); *In re Rios*, 649 B.R. 30 (Bankr. E.D. Wis. 2023); and *United States v. Rogers*, 558 F. Supp. 2d 774 (N.D. Ohio 2008). This argument fails for two independent reasons.

1. **The Government's Cases Presuppose a Valid and Preserved Lien and Do Not Address the Threshold Question Here**

*Rich, Rios*, and *Rogers* stand for the unremarkable proposition that where a valid, pre-existing statutory lien exists, that lien may attach to property that the debtor excluded from the bankruptcy estate. But each of those decisions assumed the existence of a valid lien in the first instance. The government relies on these cases to resolve a threshold question they do not address: whether the IRS preserved any enforceable in rem rights through its conduct in this bankruptcy. That question remains open. The government has not cited any authority holding that a creditor may file an entirely unsecured claim, participate in bankruptcy without asserting any lien rights, and then emerge from the bankruptcy with its in rem rights fully intact against excluded assets.

*In re Rich* does not support the government's position. The court held in the debtor's favor — the pension plan was not excluded from the estate, was properly claimed as exempt, and therefore was not subject to the unfiled tax lien. The government's selective quotation of *Rich*'s conditional statement turns the holding on its head.

Defendants do not contend that § 506(d) automatically voids the IRS's statutory lien merely because the trust assets were excluded from the estate. The threshold question here — whether the IRS preserved any enforceable in rem rights through its conduct in this bankruptcy — is logically prior to any § 506(d) analysis and is addressed in Arguments II.A and II.B.

2. **The Basis for the Trusts' Exclusion Reinforces the Absence of an Attachable Property Right**

The § 541(c)(2) exclusion was premised on the enforceability of Bahamian transfer restrictions — the same Bahamian law the government now asks the Court to disregard. Mr. Kroner's amended schedule expressly states the trust interests are "Not property of the estate pursuant to 11 U.S.C. § 541(c)(2)." The government accepts that premise when convenient and discards it when it defeats its lien theory.

The government has not cited any authority holding that a creditor may participate in bankruptcy in this posture — without asserting any lien rights against excluded assets — and then emerge with its in rem rights fully intact.

**D.      The Schedule C Filing Does Not Support the Government's Estoppel Argument — and the Florida Statutes Cited Refute the Government's Choice of Law Position**

The Florida statutes Mr. Kroner cited on his amended Schedule C, §§ 736.0502 and 736.0504, are not the statute on which the government's lien theory depends. ECF 84 ¶ 62.

The distinction is legally significant. Sections 736.0502 and 736.0504 protect the interests of beneficiaries in spendthrift and discretionary trusts from claims of their creditors. These are the protections that cause a trust interest to be excluded from the bankruptcy estate under § 541(c)(2). Section 736.0505, by contrast, is the provision that limits those protections when the settlor creates a trust for his own benefit. By citing §§ 736.0502 and 736.0504, Mr. Kroner was invoking the beneficiary-protective provisions of Florida trust law, which is entirely consistent with his position that the trusts are not self-settled asset protection trusts subject to § 736.0505.  The Schedule C filing thus confirms rather than undermines the position Defendants take that the trusts were excluded from the estate on beneficiary-protective grounds, not self-settled trust grounds, which is entirely consistent with the Bahamian law governing them.

**E.      The Chapter 11 Plan Confirmation Defense Is Preserved**

The government argues that the potential confirmation of a Chapter 11 plan would not extinguish its ability to enforce its tax lien, because a bankruptcy discharge extinguishes only in personam liability while leaving in rem rights intact. See *Johnson v. Home State Bank*, 501 U.S. 78, 79 (1991). Defendants do not dispute the general principle of *Johnson* here. However, this defense is expressly preserved for future proceedings on two grounds. The defense is not yet ripe,

no plan has been confirmed, and courts do not issue advisory opinions on contingencies that may never arise. *Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989).

If the government's in rem claim succeeds and the corpus is repatriated, there are no trust distributions to fund a plan; if it fails, distributions remain available and the government's in personam claim applies to them, a sequencing question for another day.

### III.    EVEN IF BOTH LIEN ATTACHMENT AND LIEN SURVIVAL WERE ESTABLISHED, FULL REPATRIATION OF THE TRUST CORPUS IS NOT THE APPROPRIATE REMEDY.

**A.    Repatriation Is a Discretionary Equitable Remedy Under § 7402(a), Not an Entitlement, and the Government Cannot Satisfy the Requirements for That Remedy on This Record.**

The government's sole statutory basis for a repatriation order is 26 U.S.C. § 7402(a), which grants district courts' jurisdiction. The statute does not authorize the automatic repatriation of offshore assets upon a showing of lien attachment; it authorizes the Court to fashion equitable relief that is necessary and appropriate on the specific facts presented; an extraordinary remedy, not a legal entitlement. The government's motion papers do not engage with these equitable requirements. They treat § 7402(a) as if it provides a mechanical entitlement: once a lien is shown, repatriation follows. That is not the law.

#### 1. The Government's Own Precedents Establish That Repatriation Requires Specific Equitable Findings That Cannot Be Made on This Record.

The government relies principally on the *Grant* litigation and *United States v. Schwarzbaum,* No. 18-CV-81147, 2021 WL 4958307 (S.D. Fla. Oct. 26, 2021)  to argue that repatriation is an available remedy. But those cases are distinguishable in ways that are fatal to the government's position here. In *Grant* II, the court ordered repatriation of offshore trust assets only after finding a specific and critical fact: Arline Grant had "total unreviewable authority over discharge and appointment of the Trustees," such that "by giving Arline Grant total unreviewable

authority over discharge and appointment of the Trustees, she in actuality controls the corpus of each trust." *Grant* II, 96 A.F.T.R.2d at 3 (emphasis added).

Burt Kroner has no such power. Neither the 2004 Trust deed nor the 2007 Trust deed grants Kroner any authority to remove or replace Equity Trust Bahamas, Ltd. as trustee, unilaterally or otherwise.  As Defendants' expert Leslie A. Share, Esq. confirmed, Kroner "did not have and never had the authority under either trust deed to remove or replace the trustee, and thus had no right to 'force' any distributions whatsoever to be made from the trusts as he correspondingly had no control over the respective trustees' exercises of their discretion with regard to such distributions." ECF 84 ¶ 53.

The *Grant* III court's refusal to hold Arline Grant in contempt because the offshore trustees had made clear they would not comply with any repatriation petition. *Grant* III, 2008 U.S. Dist. LEXIS 51332, at 8-9. The lesson of the *Grant* litigation is not that repatriation is automatic; it is that repatriation is appropriate only when the defendant has genuine practical authority over the offshore assets, authority that Kroner demonstrably lacks. A court in this district reached the same conclusion on analogous facts. *Branch Banking & Trust Co. v. Hamilton Greens, LLC*, 2014 U.S. Dist. LEXIS 52877, at 10 (S.D. Fla. 2014), declined to hold an offshore trust beneficiary in contempt for failure to repatriate where he could not compel the trustee to release funds, could not replace the trustee, and could not revoke the trust.  *Schwarzbaum* involved an individual who personally held and directly controlled foreign accounts, no independent institutional trustee, no discretionary structure, no Committee of Protectors. It has no application here.

**B.    Kroner Lacks Legal Authority to Comply With a Repatriation Order, and the Court Cannot Compel the Legally Impossible.**

The most straightforward reason to deny repatriation on this record is that Burt Kroner cannot do what the government asks. A court of equity does not enter orders that the defendant is

legally incapable of performing. See *United States v. Grant* III, 2008 U.S. Dist. LEXIS 51332, at 8-9; *Branch Banking & Trust Co. v. Hamilton Greens, LLC*, 2014 U.S. Dist. LEXIS 52877, at 10 (S.D. Fla. Feb. 26, 2014) (same); see also *In re Sealed Case*, 99 F.3d 1175, 1178 (D.C. Cir. 1996) (compliance with a court order must be possible for a valid order to issue).

First, Kroner cannot compel distributions from either trust. Both the 2004 Trust and the 2007 Trust vest distribution decisions exclusively in Equity Trust Bahamas, Ltd. as trustee.

Both expert reports confirm this. Peter D. Maynard KC, PhD, Senior Partner of a leading Bahamian law firm and the defendant trustee's expert on Bahamian law, opines that under Bahamian law "a beneficiary of a discretionary trust has no interest in or entitlement to any of the assets comprising the property of the trust." ECF 84 ¶ 58. Leslie A. Share, Esq., opines under Florida law to the same effect. ECF 84 ¶ 53.

Second, Kroner cannot remove or replace Equity Trust as trustee. This fundamentally distinguishes this case from *Grant* II, where the court's entire repatriation rationale rested on the beneficiary's "total unreviewable authority over discharge and appointment of the Trustees."

Third, and reinforcing both points, both trust deeds independently authorize the trustee to withhold distributions and to disregard foreign court orders. ECF 84 ¶¶ 50–51. Bahamian statute reinforces those provisions. Section 8 of the Bahamian Trusts (Choice of Governing Law) Act ('TCGLA') expressly protects Bahamian trusts from foreign court orders and authorizes the trustee to disregard them, and both trust deeds further provide that no trustee shall be subject to the jurisdiction of any United States court. ECF 84 ¶¶ 55, 57, 66.

The practical consequence is this: even if this Court were to enter a repatriation order directed at Burt Kroner, Kroner would have no legal means of compelling Equity Trust to comply. He cannot order distributions. He cannot remove the trustee. He cannot override the Committee of

Protectors. The *Grant* III court recognized precisely this situation when it refused to hold Arline Grant in contempt.

Furthermore, the government argues that personal jurisdiction over Equity Trust is sufficient to make it comply with court orders, citing *First Nat. City Bank*, 379 U.S. 378, 384 (1965). Personal jurisdiction gives the court authority to order a party to act within its *legal capacity*; it does not expand a party's capacity beyond what the law governing its fiduciary obligations permits.

The government's anticipated self-created impossibility argument fails for the same reason. *Hamilton Greens* rejected that argument and distinguished *In re Lawrence*, 279 F.3d 1294 (11th Cir. 2002), because the *Lawrence* debtor retained authority to appoint a new trustee who could undo his excluded-person status — a mechanism entirely absent here. Without that control, creating an offshore trust is not self-created impossibility. 2014 U.S. Dist. LEXIS 52877, at 12–13. Kroner never held trustee-appointment authority. ECF 84 ¶ 52.

**C.     Even If the Government Prevails on the Merits, the Appropriate Final Remedy Under § 7402(a) Is a Permanent Injunction Capping Distributions, Not Full Repatriation of the Corpus**

Equitable remedies must be proportionate to the legitimate interest being served. Even assuming the government establishes both lien attachment and lien survival, § 7402(a)'s "necessary or appropriate" standard does not automatically entitle it to full repatriation of the entire corpus. The question is what final equitable remedy adequately secures the government's collection interest without imposing a disproportionate burden. The record answers that question: a permanent injunction modeled on the existing preliminary injunction framework fully secures the government's interest and is the appropriate final remedy.

The existing preliminary injunction demonstrates why. It prohibits the Kroner Defendants from encumbering, liquidating, or transferring trust assets; requires immediate disclosure of every

distribution request and every distribution received; caps monthly distributions at $42,000; and prohibits any amendments to the trust instruments. ECF 84 ¶¶ 63–64. The government's tax lien attaches to any distribution received by Kroner as it is made. The proper analogy is a judgment creditor's lien on rental property: the lien attaches to rents as collected, not to the underlying real estate. Ordering repatriation of the entire corpus to secure a liquidated debt is the equivalent of ordering a mortgagee to take immediate title rather than foreclose.

The government's argument for full repatriation rests on the premise that offshore assets must be brought within the jurisdiction to be meaningful security for a tax debt. But the preliminary injunction refutes that premise in practice. The trust assets are not being dissipated, hidden, or transferred beyond reach. They are frozen in place by an operative court order, with mandatory disclosure obligations that allow the government to monitor all distributions in real time. There is no gap in the protective framework that requires the extraordinary remedy of full repatriation.

**D.     Full Repatriation Would Eliminate the Trust Res and Extinguish the Trustee's Fiduciary Obligations to Innocent Third Parties Who Are Not the Tax Debtor**

Courts of equity do not ignore the interests of innocent persons who would be swept up in the relief requested. Alyson Kroner, William Kroner, and a minor child, J.K. are all potential beneficiaries of these trusts — persons to whom Equity Trust owes fiduciary duties of consideration under the trust instruments and Bahamian law. ECF 77 ¶ 3; ECF 84 ¶ 12. Repatriating the entire corpus would permanently eliminate the trust res, extinguishing the trustee's ability to ever exercise its discretion in their favor. None of these potential beneficiaries owe the tax debt at issue. None have been found to have engaged in wrongdoing. Section 7402(a)'s "necessary or appropriate" standard requires a court of equity to weigh this hardship before ordering so drastic a remedy.

Burt Kroner is the only defendant against whom the IRS has a tax claim. The other beneficiaries are defendants in this action only because they are named trust beneficiaries whose interests would be affected by a repatriation order. They are not themselves delinquent taxpayers. This is independently dispositive as to the 2007 Trust: David Haring, not Burt Kroner, funded that trust with two transfers totaling $5,000,000, ECF 77 ¶ 16-17, and even on the government's own theory that § 736.0505 governs, a creditor of the settlor can reach only what the settlor funded. Kroner is not the settlor of that trust and his creditors cannot reach its corpus on that basis alone.

Ordering full repatriation of the entire corpus of both trusts on summary judgment without identifying what portion is attributable to Kroner's contributions, without adjudicating the trustee's fiduciary obligations to non-debtor potential beneficiaries, and without particularizing any portion of the corpus that might properly be reachable even on the government's own theory, is an overreach that equity does not sanction. These questions are material, they are disputed, and they require resolution at trial. *Anderson v. Liberty Lobby*, 477 U.S. at 248.

## CONCLUSION

The government's motion for summary judgment should be denied. Three independent grounds, each sufficient on its own, preclude the entry of judgment as a matter of law.

On lien attachment, the government's choice-of-law theory is foreclosed by controlling Supreme Court precedent directing courts to the jurisdiction where the taxpayer's rights were created. Even setting aside the choice-of-law question, the government cannot establish as a matter of undisputed fact that Mr. Kroner is the settlor of the 2007 Trust, where a sworn third-party declaration directly contradicts the government's inference. And even assuming the government prevails on both of those questions, the discretionary nature of both trusts means that no present attachable property interest in the corpus exists under either Bahamian or Florida law.

Respectfully submitted,

Weisberg Kainen Mark, PL Miami Tower
100 SE 2nd Street, Ste. 2222
Miami, Florida 33131
Phone: (305) 374-5544
Facsimile No: (305) 358-8565
dkainen@wkm-law.com

BY: /s/ Dennis G. Kainen
        Dennis G. Kainen
        Florida Bar No. 339393

Weisberg Kainen Mark, PL Miami Tower
100 SE 2nd Street, Ste. 2222
Miami, Florida 33131
Phone: (305) 374-5544
Facsimile No: (305) 358-8565
bmark@wkm-law.com

BY: /s/ Brielle L. Mark
        Brielle L. Mark
        Florida Bar No. 0721956

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed via CMF/ECF this 13th day of March, 2026.

/s/ Dennis G. Kainen
Dennis G. Kainen