IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,                     Case No. 9:25-cv-80877

    Plaintiff,

v.

BURT KRONER, on his own behalf and on behalf
of his minor child, J.K.;

ALYSON D. KRONER, on her own behalf and on
behalf of her minor child, J.K.;

WILLIAM KRONER;

EQUITY TRUST BAHAMAS, LTD.,
in its capacity as the trustee of the Kroner Family Trust 2004
and Kroner Family 2007 Trust Settlement B.

    Defendants
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

    Pursuant to S.D. Fla. Local Rule 56.1(b), Defendants BURT KRONER, on his own behalf and on behalf of his minor child, J.K.; ALYSON D. KRONER, on her own behalf and on behalf of her minor child, J.K.; and WILLIAM KRONER, through counsel, hereby respond to the United States of America's Statement of Material Facts [ECF 77] and set forth their own Additional Material Facts.

**Responses to Plaintiff's Statement of Material Facts:**

**Kroner Family Trust 2004**

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Disputed: The trust instrument provides that the trustee may, in its sole and absolute discretion, distribute principal to Mr. Kroner among other beneficiaries. ECF 64, Ex. 6 at 5. The government's statement omits the critical qualification that the power to distribute is vested exclusively in Equity Trust as trustee, in its sole, absolute, and unrestricted discretion, and that Mr. Kroner has no right to demand, compel, or direct any distribution. The 2004 Trust expressly states: "This is a discretionary trust and, except as otherwise provided herein, no Beneficiary hereunder has any ascertainable right, title, or interest to any portion of the Trust Estate, whether determined actuarially or otherwise; and the Trustees have the discretion to completely withhold distributions from any one Beneficiary." ECF 64, Ex. 6, at 5.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Disputed. The transfer was made from the account of Sureline Investments LLC, not directly by Mr. Kroner. ECF 64, Ex. 27 at 9.

### Kroner Family 2007 Trust Settlement B

11. Undisputed.

12. Disputed: Alyson D. Kroner, is also a beneficiary of the 2007 Trust. ECF 1 ¶ 6

13. Undisputed.

14. Undisputed.

15. *Disputed*: As with the 2004 Trust, the trustee of the 2007 Trust may, in its sole and absolute discretion, distribute principal to Mr. Kroner among other beneficiaries. ECF 64, Ex. 7 at 32. The government's statement omits the critical qualification that the power to distribute is vested exclusively in Equity Trust as trustee, in its absolute discretion, and that Mr. Kroner cannot compel any distribution. The 2007 Trust provides: "The Trustees shall exercise the discretions (each of which shall ... be absolute) and powers vested in them as they shall think fit for the benefit of all or any of the Beneficiaries and may exercise (or refrain from exercising) any discretion or power for the benefit of any of them without being obliged to consider the interests of the others." ECF 64, Ex. 7, at 27.

16. Undisputed.

17. Undisputed.

18. Disputed. The 2007 Trust deed does not merely "state an intention" to be governed by Bahamian law. Part I, Clause 2(a) of the 2007 Trust provides that the trust "is established under the laws of The Commonwealth of The Bahamas and shall be construed and take effect according to the law of The Commonwealth of The Bahamas as interpreted by the Courts of The Commonwealth of The Bahamas, which shall be the forum for the administration hereof." ECF 64-7 at 4.

19. Disputed. The IRS annual information returns filed by Equity Trust reflect a tax reporting classification under the Internal Revenue Code; they do not reflect an independent determination of settlor status under state or foreign trust law. The undisputed record evidence is that David Haring, not Burt Kroner, funded the 2007 Trust with $5,000,000 in two gratuitous transfers in July 2007. **Ex. 1 (Declaration of David Haring) ¶¶ 3–5**; ECF 64-7 at 6.

## Mr. Kroner's Tax Liability

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Disputed. Tax debt is owed and continues to accrue interest until paid, settled, or discharged.

## Mr. Kroner's Chapter 11 Bankruptcy Case

31. Undisputed.

32. Disputed: The IRS filed a proof of claim in the bankruptcy case on December 28, 2023. *In re Kroner,* Case No. 23-16097-MAM [Bankr. S.D. Fla.], **Ex. 2 (IRS Proof of Claim 2-2) at 2**. On the proof of claim form, the IRS answered "No" in response to the question whether the claim was secured by a lien on property, identified no collateral, stated no basis for lien perfection or priority, and listed the entire balance as general unsecured. Id. at pgs. 2–3. The IRS did not assert the existence of any federal tax lien against trust assets, or any lien against any asset, anywhere in the proof of claim. Id.

33. Undisputed.

34. *Disputed*: Defendants do not dispute that the Amended Schedule C filed December 30, 2024 claimed a homestead exemption for the real property at 17730 Scarsdale Way, Boca Raton, Florida. Defendants dispute the government's characterization as incomplete: the Amended Schedule C listed the beneficial interests in both the 2004 Trust and 2007 Trust on Schedule A/B under the category "Trusts, equitable or future interests in property" (line 25) with the notation "Not property of the Debtor's estate, pursuant to 11 U.S.C. section 541(c)(2)." ECF 64-28 at 6. That listing was accompanied by a sworn footnote stating: "The listing of these beneficial interests on this Schedule C are not to be construed as the Debtor asserting that such interests are property of the estate and therefore requiring a claim of exemption; rather, the Debtor asserts that these interests are not property of the estate and the claimed exemptions are listed here in an abundance of caution." ECF 64-28 at 10. The statutes cited as the basis for the exemptions were Fla. Stat. §§ 736.0502 and 736.0504, not § 736.0505. *Id.*

35. Disputed: Defendants do not dispute that the Amended Schedule C listed the trust interests under 11 U.S.C. § 541(c)(2). ECF 64-28 at 6. Defendants dispute that the listing constitutes an admission that the trust interests are property of the estate: the schedule contained a sworn footnote expressly stating that the listing was made "in an abundance of caution" only and was "not to be construed as the Debtor asserting that such interests are property of the estate." ECF 64-28 at 10. Also, Mr. Kroner has taken the position that the trust interests are excluded from the bankruptcy estate since the filing of Mr. Kroner's petition for bankruptcy relief.

36. Undisputed.

37. *Disputed*: Defendants clarify that on July 10, 2025, the Bankruptcy Court entered an Agreed Order (ECF 64, Ex. 8, at 2) with three operative provisions: (1) the Bahamas Trusts are excluded from the bankruptcy estate; (2) the IRS is permitted to file a lien enforcement action

5

in federal district court; and (3) the IRS is directed to withdraw its estate-property-based objections to the debtor's plan. Defendants dispute the government's characterization that the Agreed Order "states that the United States was entitled to immediately sue Mr. Kroner to repatriate assets held by the Bahamas Trusts." The order permits the IRS to file suit to enforce a lien; it does not (1) authorize the IRS to file an *in personam* action against Mr. Kroner, (2) adjudicate the validity of any federal tax lien, (3) find that any lien attaches to trust assets, or (4) adjudicate any entitlement to repatriation. See also ECF 18 ¶ 32 (Defendants' Answer: "Denied that there is any agreement or order that authorizes enforcement of a district court order or judgment of foreclosure or repatriation."). At the September 10, 2025 hearing before the Bankruptcy Court, the Honorable Mindy A. Mora explicitly confirmed that she did not adjudicate lien validity: "I don't think there is collateral estoppel on that issue, because I don't recall deciding it." **Ex. 3 (Bankruptcy Hearing Transcript, Sept. 10, 2025) at 27:17–19.**

## The United States' Suit to Repatriate the Bahamas Trusts

38. Undisputed.

39. Disputed: The government states that the United States filed a Motion for Preliminary Injunction on "August 29, 2026." This appears to be a typographical error; the motion [ECF 21] was filed in 2025. Defendants admit that the United States filed a Motion for Entry of Preliminary Injunction [ECF 21] in 2025. ECF 21.

40. Undisputed.

41. Undisputed.

42. Disputed: Defendants admit that the preliminary injunction (ECF 74) limits distributions to $42,000 per month and limits the ability to amend the trusts. Defendants note that the order contains additional operative provisions not mentioned in ¶ 42: (1) the Kroner Defendants are

prohibited from encumbering, liquidating, transferring, or otherwise spending or disposing of trust assets (¶ 2); (2) the Kroner Defendants are required to immediately disclose each distribution request made to the trustee to government counsel (¶ 3); (3) the Kroner Defendants are required to immediately disclose each distribution received from the trustee to government counsel (¶ 4); (4) the Kroner Defendants are required to immediately notify the Court if the trust protector exercises any power in relation to the trusts (¶ 9). ECF 74, ¶¶ 2–4, 9.

**Additional Facts:**

43. In the proof of claim filed December 28, 2023 (Claim 2-2), the IRS answered "No" in response to the form question "Is the claim secured?" **Ex. 2 (IRS Proof of Claim 2-2) at 2.**

44. In Claim 2-2, the IRS identified no collateral, stated no basis for lien perfection, asserted no federal tax lien against the Bahamas Trusts or any other asset, and listed the entire balance — $20,613,944.63 — as general unsecured, with $190.03 listed as priority unsecured and no portion listed as secured. **Ex. 2 at 2–3.**

45. The Agreed Order entered July 10, 2025 permitted the IRS to file a lien enforcement suit in district court. It contains no finding that any federal tax lien is valid, that any lien attaches to the trust assets, or that the United States is entitled to repatriation or any other substantive relief. ECF 64-8 at 2.

46. At the September 10, 2025 bankruptcy hearing, Judge Mora stated: "I didn't determine the validity of that lien . . . That issue . . . is for somebody with a higher pay grade, the District Court judge, to make that determination whether you do have it or you don't." She further stated: "I don't think there is collateral estoppel on that issue, because I don't recall deciding it." **Ex. 3 (Bankruptcy Hearing Transcript, Sept. 10, 2025) at 27:6–19.**

47. At the same hearing, counsel for Defendants confirmed that Defendants "did not agree in any form or fashion ... that they have a valid lien on the trust." **Ex. 3 at 25:16–24.**

48. Under Article IV.A of the 2004 Trust, the trust "is a discretionary trust" and "no Beneficiary hereunder has any ascertainable right, title, or interest to any portion of the Trust Estate, whether determined actuarially or otherwise; and the Trustees have the discretion to completely withhold distributions from any one Beneficiary." ECF 64-6 at 5.

49. Under Part II, Appendix ¶ 35 of the 2007 Trust, the Trustees "shall exercise the discretions (each of which shall ... be absolute) and powers vested in them as they shall think fit for the benefit of all or any of the Beneficiaries and may exercise (or refrain from exercising) any discretion or power for the benefit of any of them without being obliged to consider the interests of the others." ECF 64-7 at 32.

50. Article IV.C.5 of the 2004 Trust expressly authorizes the trustees to withhold distributions where the trust estate "is or may be subject to conflicting claims, to tax deficiencies, or to liabilities contingent or otherwise," and further provides that "[t]he Trustees in the exercise of their sole and absolute discretion need not recognize any order of any court other than a court of a jurisdiction whose law is the Proper Law of this Settlement." ECF 64-6 at 6.

51. Under Part II, ¶ 9 of the 2007 Trust, the Trustees may "at the sole and absolute discretion withhold from distribution any property of the Trust Fund ... if the Trustees determine in the Trustees' sole and absolute discretion, that the property is or may be subject to conflicting claims, to tax deficiencies, or to liabilities contingent or otherwise." The same paragraph further provides: "The Trustees in the exercise of their sole and absolute discretion need not recognize any order of any court other than a court of a jurisdiction whose law is the Proper Law of this Settlement." ECF 64-7 at 15, ¶ 9.

52. Neither trust deed grants Burt Kroner any authority to remove or replace Equity Trust Bahamas, Ltd. as trustee. Both trust instruments vest the power to remove, appoint, and replace trustees exclusively in the Committee of Trust Protectors. ECF 64-6 at 26; ECF 64-7 at 14.

53. Burt Kroner has no unilateral authority to remove or replace Equity Trust Bahamas, Ltd. as trustee of either trust and has no ability to compel the Committee of Trust Protectors to exercise its removal or appointment powers. **Ex. 4 (Expert Report of Leslie A. Share, Esq.)** at 11–12.

54. Expert Leslie A. Share, Esq. opines that because Mr. Haring established and funded the 2007 Trust, Mr. Kroner is not the settlor of the 2007 Trust for purposes of Florida or Bahamian trust law. **Ex. 4 at 7**.

55. Section 8 of the Bahamian Trusts (Choice of Governing Law) Act ("TCGLA") provides that no Bahamian trust "is void, voidable, liable to be set aside or defective in any manner by reference to a foreign law," and that no trustee or beneficiary is "to be subjected to any obligation or liability or deprived of any right, claim or interest by reason that ... the trust or disposition potentially avoids or defeats claims, interests, obligations or liabilities conferred or imposed by foreign law upon any person." **Ex. 5 (Expert Report of Peter D. Maynard KC, PhD) at E.43, citing TCGLA § 8.**

56. Section 4(2) of the TCGLA provides that "[a] term of a trust expressly declaring that the laws of The Bahamas shall govern the trust is valid, effective and conclusive regardless of any circumstance." **Ex. 5 at 6.**

57. Section 10 of the TCGLA provides: "A foreign judgment shall not be recognised or enforced or give rise to any estoppel insofar as it is inconsistent with section 8 or section 9." **Ex. 5** at E.43, citing TCGLA § 10.

58. Expert Peter D. Maynard KC, PhD, opines that under Bahamian law a beneficiary of a discretionary trust has no interest in or entitlement to any of the assets of the trust, and that a beneficiary's interest is limited to what the trustee distributes, "regardless of whether such beneficiary is the Settlor of the discretionary trust or not." **Ex. 5 at B.1–B.2, 11.**

59. David Haring, not Burt Kroner, funded the 2007 Trust with two transfers of $2,500,000 each in July 2007. **Ex. 1 (Declaration of David Haring) ¶ 3.**

60. Haring's declaration, executed under penalty of perjury, states that the sums he gave to Burt Kroner in 2005–2007, including the $5,000,000 deposited into the 2007 Trust, "were, and were intended to be, 100% gifts. That is, the money was bestowed by me voluntarily and without obligation. It was a transfer of property with nothing given or expected in return." **Ex. 1 ¶ 3.**

61. The Amended Schedule C listing the trust interests contains an express sworn footnote: "The listing of these beneficial interests on this Schedule C are not to be construed as the Debtor asserting that such interests are property of the estate and therefore requiring a claim of exemption; rather, the Debtor asserts that these interests are not property of the estate and the claimed exemptions are listed here in an abundance of caution." ECF 64-28 at 10.

62. The Amended Schedule C cites Fla. Stat. §§ 736.0502 and 736.0504 as the exemption statutes applicable to the trust interests. ECF 64-28 at 10. Section 736.0505 is the provision upon which the government's lien attachment theory depends; §§ 736.0502 and 736.0504 are beneficiary-protective provisions that address a creditor's inability to compel distributions from a discretionary trust.

63. The preliminary injunction (ECF 74) prohibits the Kroner Defendants from encumbering, liquidating, transferring, or otherwise spending or disposing of the assets held by the Bahamas

Trusts, from requesting or making any amendments to the Bahamas Trusts, and requires them to immediately inform the Court if the trust protector exercises any power in relation to the Bahamas Trusts. ECF 74, ¶¶ 2, 8–9.

64. The preliminary injunction requires the Kroner Defendants to immediately disclose to government counsel each distribution request they make to the trustee and each distribution they receive from the trustee, and caps monthly distributions at $42,000. ECF 74, ¶¶ 3–4.

65. Equity Trust Bahamas, Ltd. is the institutional trustee of both the 2004 Trust and the 2007 Trust, administering both trusts in the Commonwealth of The Bahamas. ECF 81-1, April 29, 2004 Deed of Settlement (the "2004 Trust Deed"); 81-2, July 18, 2013 Deed of Removal and Appointment of Trustee ("July 18, 2013 Deed") (demonstrating that Equity became the Trustee of the 2004 Trust); ECF 81-3, July 25, 2013 Deed Regarding Change of Proper Law (the "July 25, 2013 Deed"); ECF 81-4, June 4, 2007 Settlement for the 2007 Trust ("2007 Trust Deed"); ECF 81-5, April 17, 2014 Notice of Removal/Replacement of Trustee (demonstrating that Equity became the Trustee of the 2007 Trust).

66. Both trust deeds expressly provide that no person appointed as a trustee or fiduciary under either trust "shall be directly or indirectly subject to the jurisdiction of any court of the United States." ECF 64-6 at 26; ECF 64-7 at 19.

67. David Haring is the settlor of the 2007 trust. ECF 64-7 at 1.

Respectfully submitted,

Weisberg Kainen Mark, PL Miami Tower
100 SE 2nd Street, Ste. 2222
Miami, Florida 33131
Phone: (305) 374-5544
Facsimile No: (305) 358-8565
dkainen@wkm-law.com

>BY: /s/ Dennis G. Kainen
>    Dennis G. Kainen
>    Florida Bar No. 339393
>
>Weisberg Kainen Mark, PL Miami Tower
>100 SE 2nd Street, Ste. 2222
>Miami, Florida 33131
>Phone: (305) 374-5544
>Facsimile No: (305) 358-8565
>bmark@wkm-law.com
>
>BY: /s/ Brielle L. Mark
>    Brielle L. Mark
>    Florida Bar No. 0721956

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed via CMF/ECF this 13th day of March, 2026.

>/s/ Dennis G. Kainen
>Dennis G. Kainen