**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 9:25-cv-80877-DMM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURT KRONER, on his own behalf and on | ) | |
| behalf of his minor child, J.K., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**EQUITY TRUST BAHAMAS, LTD.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF UNITED STATES OF AMERICA'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

1

Defendant Equity Trust Bahamas, Ltd., as the trustee of the Kroner Family Trust 2004 and the Kroner Family 2007 Trust Settlement B ("Equity"), files this Memorandum of Law in Opposition to Plaintiff United States of America's (the "Government") Motion for Summary Judgment (the "Gov. SJ Motion," Dkt. No. 76).

## I.   <u>INTRODUCTION</u>

The Government attempts to seize foreign assets held by two Bahamian irrevocable trusts to satisfy the tax debts of Burt Kroner, one of several beneficiaries of the trusts.[1] Kroner, however, does not own or control the trusts or the property therein. Rather, Equity—which is a Bahamian trust company that serves as trustee—has complete discretion to decide whether to distribute trust property to Kroner (or anyone else), including the discretion to give Kroner nothing at all. Because the trusts are irrevocable, there is nothing Kroner can do to change this. Given Kroner's complete inability to compel distributions to himself, his only "right" is to have requests for distribution considered by Equity. If Equity grants a distribution request, then whatever Equity chooses to provide him becomes his property. This arrangement is entirely compliant with Bahamian law. Indeed, the Government has acknowledged as much. And there is no evidence in this case to suggest that Equity or the beneficiaries failed to abide by the terms of the trust deeds at all times.

Because it cannot escape these indisputable facts, the Government argues that, under <u>Florida</u> law, the IRS could reach the trust assets to satisfy Kroner's tax debts. In making this argument, however, the Government ignores well-settled United States Supreme Court law specifying that, in federal tax lien cases, a court must look to the state where the taxpayer's property interest was created to determine what rights the taxpayer has in the property. Here, there is no dispute that Kroner's rights as a discretionary beneficiary were created in the Bahamas, long

---

[1] An irrevocable trust is "[a] trust that cannot be terminated by the settlor once it is created." TRUST, Black's Law Dictionary (12th ed. 2024).

before he had knowledge of any tax dispute. There is similarly no dispute that the trust deeds are expressly governed by Bahamian law, the trusts are administered in the Bahamas, there is a Bahamian Protector, and the Trustee is a Bahamian corporation. Florida had no role in creating the interests Kroner has in the trusts.

Because, under Bahamian law, Kroner does not have any right to trust property until it is actually distributed to him by Equity in its discretion—and because the Government's rights to Kroner's property are no greater than the rights of Kroner himself—the Government cannot compel Equity to disburse any (let alone all) of the trusts' assets to the Government to satisfy Kroner's tax debts. There is nothing unfair about this outcome, and it does not enable Kroner to use the trusts to escape his tax liability. So long as the Government still has its tax liens, those liens will attach to any distributions that Kroner receives from the trusts. Put simply, as a matter of trust law, given that the Government does not dispute (nor even allege) that these trusts were lawfully established and operated at all times, the trusts cannot now simply be ignored at the Government's whim. And the Government's reliance on cases where the settlor of the trusts retained control over trust assets (*e.g.*, by controlling the trustees, or the protectors, or both), are factually distinguishable from this case involving a trustee whose conduct was at all times compliant with applicable law.

In sum, for the reasons set forth herein, the Court should find that the Government's tax liens do not attach to the assets held by the two Bahamian trusts, reject the Government's request to order Kroner to repatriate those assets as he lacks any legal ability to do so, deny the Government's Motion, and grant Equity's own pending Motion for Summary Judgment.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not "material" unless it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is not "genuine" unless the evidence would allow a reasonable factfinder to return a verdict in favor of the non-moving party. *Id.* In demonstrating the absence of a genuine issue of material fact, the moving party can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (U.S. 1986). After the movant has satisfied its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (U.S. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## III.   <u>ARGUMENT</u>[2]

### A.   **The Government's Motion Improperly Seeks Relief Against Equity That is <u>Not Pled in the Government's Complaint</u>**

In its Motion, the Government asks the Court to award the following relief against Equity:

> 1) Equity must take all necessary steps to repatriate the remaining assets held by the Bahamas Trusts within [sic] into the Court's registry within 30 days of the Court's Order;
>
> 2) Equity is prohibited from taking assessing [sic] any fees that are not billable before the Court's order requiring repatriation of the Bahamas Trusts;

---

[2] Pursuant to S.D. Fla. Local Rule 56.1, Equity filed its Statement of Material Facts along with its own Motion for Summary Judgment (Dkt. No. 81), and is filing its Response to the Government's Statement of Material Facts contemporaneously with this Motion.

Dkt. No. 76, Motion at ii. The requested relief is inappropriate because the Government's Complaint does not state a claim against Equity, let alone seek the relief set forth in the Motion. Specifically, the Complaint advances two Counts, both of which seek to compel **Burt Kroner** to repatriate the assets of the Trusts. *See* Dkt. No. 1, Compl. ¶ 39 (in which the Government, in Count I, alleges that "Mr. Kroner has a substantial tax liability, collection of which will be jeopardized unless he is ordered to repatriate the assets held by the 2004 Trust"); *id.* ¶ 49 (in which the Government, in Count II, alleges that "Mr. Kroner has a substantial tax liability, collection of which will be jeopardized unless he is ordered to repatriate the assets held by the 2007 Trust").

The Government seeks an order that Kroner repatriate the assets of the Trusts, and a declaration that the federal tax liens attach to assets of the Trusts. *Id.* at 11. But the Complaint does not allege Equity did anything wrong, nor ask the Court to award any relief *as against Equity*. As a result, the Government's Motion should be denied as against Equity for this reason alone.

**B.    The Government Cannot Force the Repatriation of Foreign Assets That Do Not Belong to Kroner**

In seeking to satisfy Kroner's tax debts, the Government argues that district courts have broad authority to issue repatriation orders. *See* Dkt. No. 76, Gov. SJ Motion at 4. But in order to compel a party to transfer or "repatriate" funds to the Government, the Government must prove that the party in debt to the Government actually owns or controls the assets at issue. This is made clear by the very cases upon which the Government itself relies. *See United States v. Schwarzbaum*, No. 18-CV-81147, 2021 WL 4958307, at *1 (S.D. Fla. Oct. 26, 2021) (ordering defendant to "repatriate ***his foreign assets*** by virtue of its personal jurisdiction over him . . .") (emphasis added); *United States v. Greene*, No. C-83-6107-MHP, 1984 WL 256, *1 (N.D. Cal. Mar. 30, 1984) (ordering repatriation where defendant "liquidated . . . ***his United States assets*** and placed the proceeds in a foreign bank account" following an earlier conviction for tax evasion) (emphasis

added); *United States v. L & L International, Inc.*, 2020 WL 168852, at *7-8 (S.D. Tex. 2020) (in which the court found that, under the alter ego doctrine—which is not at issue here—a defendant Texas corporation was the alter ego of the taxpayer, and ordered the taxpayer and corporation to repatriate their funds to satisfy the taxpayer's debts); *United States v. Grant*, No. 00-08986-CIV, 2013 WL 1729380, at *3 (S.D. Fla. Apr. 22, 2013) (entering permanent injunction after previously entering a repatriation order).[3] Here, as discussed in greater detail below, Kroner does not own the Trust assets and does not have the power to compel Equity to distribute any such assets to him, and the assets therefore are not subject to repatriation to satisfy his tax debts.[4]

## C. Federal Tax Liens Attach Only to Distributions Made by Equity to Kroner

### 1. Under the Choice of Law Analysis That the United States Supreme Court Requires for Federal Tax Lien Actions, Bahamian Law Applies to Determine Kroner's Property Interest in the Trusts

The Government argues that its tax liens attach to all of a taxpayer's property and rights to property. Dkt. No. 76, Gov. SJ Motion at 5. Equity agrees. But the Government has misapplied the law to determine Kroner's property interest in the Trusts.

In *United States v. Bess*, the Supreme Court explained that the federal tax lien statute does not itself create property rights, "but merely attaches consequences, federally defined, to rights

---

[3] The prior repatriation order was entered in 2005. *See United States v. Grant*, No. 00-8986-CIV-JORDAN/K, 2005 WL 2671479, at *1-3 (S.D. Fla. Sept. 2, 2005), *report and recommendation adopted*, No. 00-08986-CIV-JORDAN, 2005 WL 3747779 (S.D. Fla. Dec. 22, 2005) (in which the sole surviving beneficiary of a trust had, unlike any of the beneficiaries in this action, "unreviewable discretion to change the trustees, and the present trustees *must* comply with such a request. This Court can, therefore, order Ms. Grant to change the trustee of each trust to a U.S. trustee, which will result in the repatriation of these assets.") (emphasis in original).

[4] The Government argues that ordering repatriation is necessary and appropriate because Kroner continues to live "a lavish lifestyle," even though he transferred assets offshore and declared bankruptcy. Dkt. No. 76, Gov. SJ Motion at 4-5. But not only is repatriation impermissible as a matter of law because Kroner does not own or control the assets at issue, it is also not necessary or unfair because, as discussed below, the Government's tax liens will attach to any distributions made by the Trustee to Mr. Kroner for so long as those liens exist.

*created under state law.*" 357 U.S. 51, 55 (1958) (emphasis added). Accordingly, in *Drye v. United States*, the Supreme Court directed courts to "look initially to state law to determine *what rights the taxpayer has in the property* the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." 528 U.S. 49, 58 (1999) (emphasis added; citation omitted).  Therefore, whether a taxpayer's interest in property "constitutes 'property and rights to property' for the purposes of the federal tax lien statute . . . largely depends upon state law" and the property rights created thereunder. *United States v. Craft*, 535 U.S. 274, 278 (2002); *see also Nineveh Investments Limited v. United States*, 2019 WL 3816834, at *11-*12 (E.D. Pa. 2019) (finding that Bahamian law applied and explaining that ". . . plaintiff argues that for the purposes of construing property against which a federal tax lien may attach, 'the U.S. Supreme Court had mandated that a court apply the law of the jurisdiction where the rights at issue were created in order to assess the nature of those rights.' . . . The Court agrees with plaintiff.") (citations omitted).

Here, Kroner's property rights in the Trusts were created in the Bahamas, not Florida. The Trust Deeds—which specify the nature of Kroner's property interest in the Trust assets—are expressly governed by Bahamian law, the Trusts are administered in the Bahamas, there is a Bahamian Protector, and is Equity is the Trustee. *See* Equity's Response to Statement of Material Facts ¶¶ 46, 49.[5] Florida law played no role whatsoever in determining what Kroner's property

---

[5] While the 2004 Trust was originally settled under the laws of Nevis, it was amended in 2013 to provide for the application of Bahamian law and administration in the Bahamas. *See* Dkt. No. 81-3, July 25, 2013 Deed ¶ 1 (specifying that after the Deed takes effect, "[t]he laws of the Commonwealth of the Bahamas shall be the Proper Law of this Settlement, and ***the rights of all persons beneficially entitled hereunder and the construction of each and every provision hereof shall, except as otherwise provided herein, be governed exclusively by such law***. The forum for the administration of the Settlement shall hereinafter be the Commonwealth of the Bahamas, unless subsequently changed by the trustees in accordance with the terms of the Settlement")

rights were under the governing Trust Deeds. Therefore, application of the two-part test articulated by the Supreme Court in the *Craft/Drye/Bess* line of cases—(1) look to the law of the state where the property interest was created to determine what rights the taxpayer has in that property; and (2) look to federal law to determine how the federal tax liens attach—is required, providing an appropriate framework which respects the laws of the two jurisdictions with a potential interest in this case: the Bahamas and the United States.

Oddly, the Government acknowledges the choice of law rule announced in *Drye* and *Bess*, but then inexplicably fails to apply it. *See* Dkt. No. 76, Gov. SJ Motion at 5-9. Instead, in arguing that Florida law applies to the Trusts, the Government does not cite a single federal tax lien case, and instead relies upon decisions that applied entirely different choice of law analyses that have zero relevance here. *See Dexia Credit Loc. v. Rogan*, 624 F. Supp. 2d 970, 975-76 (N.D. Ill. 2009) (civil action involving claims of fraud, conspiracy, and other torts, in which the court noted that "[a] district court *sitting in diversity* applies the choice-of-law rules of the state in which it sits" and therefore applied Illinois' choice-of-law rules) (emphasis added; citations omitted); *Ekeblad v. Pirolli, Tr. of Russell A. Ekeblad Tr.*, 574 F. Supp. 3d 42, 45-46 (D.R.I. 2021) (civil dispute between a trust beneficiary and the trustee where there were two separate trusts governed by the laws of two different states, and the court applied a "most significant relationship" test after examining the Uniform Trust Code, Rhode Island law, and Florida law to resolve the conflict); *Barbee v. Goldstein (In re Reliance Fin. & Inv. Group, Inc.)*, Case No. 05-80625, 2006 U.S. Dist. LEXIS 82945, *2, *19 (S.D. Fla. Nov. 14, 2006) (addressing a lawsuit that "derived from a series of related bankruptcy cases that were administratively consolidated" and did not involve any tax

---

(emphasis added). Therefore, Kroner's rights under the 2004 Trust, as they currently exist, were created under Bahamian law.

claims, holding that "[i]n bankruptcy cases, federal courts apply the choice of law rules for the state in which it sits, in this case Florida") (citation omitted);[6] *In re Rensin*, 600 B.R. 870, 880 (S.D. Fla. 2019) (in a bankruptcy action that did not involve tax claims, the court applied a diversity jurisdiction choice of law approach following a discussion of bankruptcy courts' split on the appropriate choice of law rules); *In re Brown*, 303 F.3d 1261 (11th Cir. 2002) (in which a Chapter 7 bankruptcy debtor sought to exclude her interest in a trust from the bankruptcy estate in a case that did not involve tax claims, and the court applied Florida law); *In re Lawrence*, 251 B.R. 630, 642 (1998) (applying Florida and federal bankruptcy law to a Mauritian trust in an opinion affirming a bankruptcy court's order that did not involve tax claims). The Government also cites the Florida Trust Code's choice of law provision, Fla. Stat. Ann. § 736.0107, but this presumes Florida law applies to the choice of law analysis, and the Supreme Court has held that it does not.[7]

Finally, in arguing against the application of Bahamian law, the Government contends that in a prior filing,

> Equity argue[d] that it "will establish that Mr. Kroner's property rights in the Trusts were created in the Bahamas, not Florida[]" and that "Florida law played no role whatsoever in determining what those property rights were under the governing Trust Deeds." . . . But they [Equity] provide no analysis about how they concluded that the Court should consider these facts in deciding whether Florida or Bahamian law governs the Bahamas Trusts. And their analysis fails to address cases like *Lawrence*, *Barbee* and *Rensin* where Florida

---

[6] The Government cites *Barbee* for the proposition that "federal courts should apply the law of the forum state when deciding choice of law disputes." Dkt. No. 76, Gov. SJ Motion at 7. Of course, as the above quotation from *Barbee* makes clear, the court was looking only at the choice of law analysis in bankruptcy cases, not federal tax lien cases, which the U.S. Supreme Court mandates be treated differently.

[7] The Government contends the Kroner Defendants should be estopped from arguing Bahamian law applies because, in his bankruptcy action, Kroner relied upon Florida law. *See* Dkt. No. 76, Gov. SJ Motion at 6-7. Equity, of course, is not a party to Kroner's bankruptcy action, and any legal position he took or did not take in that action would not have any estoppel effect on Equity in this case, nor has the Government argued otherwise.

> courts have applied Florida law to offshore assets protection trusts
> like the Bahamas Trusts.

Dkt. No. 76, Gov. SJ Motion at 9 (citations omitted). Of course, the Court must consider the Bahamas as the jurisdiction in which Kroner's property interest was created <u>because the United States Supreme Court held that it must do so</u>. And as discussed above, neither *Lawrence*, *Barbee*, nor *Rensin* were federal tax lien cases. It is incredible—and incredibly telling—that the Government filed this federal tax lien action and yet does not cite a single federal tax lien case in its choice of law analysis. This is because, as *Nineveh* makes clear, application of the federal tax lien choice of law analysis mandates application of Bahamian law. 2019 WL 3816834, at 12 ("In this case, the Trust was created under Bahamian law. Accordingly, ***the Court will first look to Bahamian law to determine what rights the taxpayer has in the property the United States seeks to reach and will not conduct a further choice of law analysis***.") (emphasis added).

### 2. The Nature of Kroner's Property Interest in the Trusts

#### a) *Proving Foreign Law*

Federal Rule of Civil Procedure 44.1 provides that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." To determine foreign law, "the court may consider ***any*** relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1 (emphasis added). That said, "[f]oreign law usually is established through 'written or oral expert testimony accompanied by extracts from foreign legal material.'" *Nineveh*, 2019 WL 3816834, at *5 (quoting *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 240 (D.D.C. 2012)). The party who seeks to apply foreign law has the burden of raising and proving foreign law so that the court may apply it. *Id.* (quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)). If the party does not establish how foreign law differs from United

States law, the court will ordinarily apply the law of the forum. *Id.* (quoting *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006)).

Here, Equity gave notice of its intent to raise an issue about Bahamian law in both its Answer to the Complaint and its "Response Regarding Plaintiff's Request for a Consolidated Hearing" ("Equity Hearing Response"). *See* Dkt. No. 27, Equity Answer to Complaint, Affirmative Defenses ¶ 3; Dkt. No. 44, Equity Hearing Response at 3-6 (describing Equity's intent to rely upon Bahamian law in defending against the Government's claims). As set forth below, Equity has adequately proven Bahamian law through the written report of its expert on Bahamian trust law, Dr. Peter Maynard, and through its citation to the legal authorities identified in Dr. Maynard's report, none of which was challenged by the Government in any way (indeed, the Government did not even submit an opposing expert report). Dr. Maynard is a Bahamian attorney who has "practiced law for approximately forty-seven (47) years[,] including the law of trusts and equitable remedies including asset protection, private client structuring, and complex cross-border asset tracing and recovery." *See* Dkt. No. 81-6, Expert Report of Peter D. Maynard at 4, § D.1. Dr. Maynard has experience with trust formation, administration, and governance, including fiduciary duties, trustee decision-making, conflicts, records, and reporting. *Id.* at 4, § D.4.

The Government acknowledges that the Court may consider expert testimony regarding foreign law, *see* Dkt. No. 76, Gov. SJ Motion at 9, but contends that the Court does not need to consider Equity's expert evidence because "Bahamian law is available for the Court to inspect and interpret" and "the parties do not dispute the potentially applicable Bahamian law." *Id.* at 10. But despite claiming that the parties do not dispute Bahamian law, the Government never actually articulates its understanding of Bahamian law. It is therefore necessary for Equity to explain that law so that the Court can apply it. The Government also contends that Equity "seek[s] to introduce

expert testimony only to add their spin on Bahamian law," but does not explain what "spin" Dr. Maynard purportedly places on Bahamian law—an especially odd statement given the Government's own acknowledgment that it does not dispute the potentially applicable Bahamian law. *Id.* Indeed, in his report, Dr. Maynard simply presents and analyzes Bahamian law and includes excerpts from the relevant source material, demonstrating that there is no "spin."[8]

The Government also argues that "expert witness testimony on Bahamian law is irrelevant to the choice of law dispute before the Court," and that "the Court should not rely on Bahamian law because the choice of law dispute should be decided under Florida law." *Id.* at 11. But in making these statements, the Government is not actually asking the Court to resolve a "choice of law dispute." Rather, the Government is improperly seeking to have the Court skip the choice of law analysis altogether and simply apply Florida law. Indeed, as discussed above, while the Government cites other cases that conducted choice of law analyses in a variety of different contexts (e.g., diversity jurisdiction, bankruptcy), it never actually identifies the specific choice of law analysis it believes should govern this federal tax lien action, let alone apply that analysis to the facts of this case. The Government's position is therefore reduced to a circular argument— Florida law applies because Florida law applies—a position that is untenable, especially in the face of controlling Supreme Court law in the *Craft/Drye/Bess* line of cases specific to tax lien matters.

Finally, there is no question that Bahamian law differs from Florida law. *Nineveh*, 2019 WL 3816834, at *5 (recognizing that the party seeking to apply foreign law must demonstrate how it differs from the forum's law) (citations and quotations omitted). Indeed, the Government has

---

[8] The Government separately contends that the Court should ignore the expert report submitted by the Kroner Defendants. *Id.* at 11. Because Equity does not rely upon the Kroner Defendants' expert report either in this Opposition or in its own Motion for Summary Judgment, the Government's argument on this issue does not apply to Equity.

acknowledged that differences between Bahamian and Florida trust law are a critical aspect of the its claims in this action. *See* Dkt. No. 1, Compl. ¶¶ 35-37, 44-46 (in which the Government recognizes that the Trust Deeds are governed by Bahamian law, but advocates for the application of Florida law as a means to secure all of the property held in the Trusts); Dkt. No. 76, SJ Motion at 8, 13-14 (in which the Government cites Florida law for the proposition that Florida does not enforce spendthrift clauses such as those contained in the 2004 and 2007 Trust Deeds against a tax lien claim);[9] *see also id.* at 14 ("The Florida Trust Code says that even if a trust contains a spendthrift clause, 'a creditor . . . of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit.'") (quoting Fla. Stat. Ann. § 736.0505(1)(b)).

For all the foregoing reasons and the reasons set forth below, Equity has carried its burden of proving foreign law under Fed. R. Civ. P. 44.1.

> b)     *Under Bahamian Law, the Beneficiary of a Discretionary Trust Does Not Have a Property Interest in the Assets of a Trust*

Under the first prong of the *Craft*/*Drye*/*Bess* analysis, which requires the Court to look at the law of the state where the property interest was created to determine what rights the taxpayer has in that property, Bahamian law distinguishes between a fixed trust and a discretionary trust as follows:

> Where a beneficiary has a current fixed entitlement to the ascertainable part of the net income or net capital, if any, of the trust fund after deduction of sums paid by the trustees in the exercise of their administrative powers of management, the beneficiary has a fixed interest which ranks as an interest in possession under the trust. Where the beneficiary has no such absolute current right to direct the trustees to pay him an ascertainable part of the net income or capital, he has no interest in possession, only being interested under a discretionary trust.

---

[9] "Spendthrift trusts are those in which the right of the beneficiary to payments is not alienable by him or subject to collection for his debts." *In re Wilson*, 140 B.R. 400, 406 (N.D. Tex. 1992).

*See* Dkt. No. 81-6, Expert Report of Peter D. Maynard at 8, § E.12 (quoting Underhill and Hayton, Law of Trusts and Trustees, 18th Ed., Article 5.1 (2), p. 98); *id.* at 8, § E.13 ("'The conventional discretionary trust for a class of beneficiaries is one where a particular beneficiary can only receive income or capital if the trustee positively decides to exercise their discretion in favour of the beneficiary; though the trustee is duty-bound to exercise their discretion to select some of the beneficiaries to receive benefits.'") (quoting Halsbury's Laws of England 2024, Volume 98, ¶ 31).[10]

Under Bahamian law, a beneficiary of a discretionary trust does not have any property interest in the trust assets themselves but, instead, has only a right to request distributions that the trustee in its discretion may grant or deny. *See* Dkt. No. 81-6, Expert Report of Peter D. Maynard at 11, § E.27 ("'No object of a discretionary trust has, as such, any legal right to or in the capital. His sole interest, if it be an 'interest' within the scope of these provisions, is with regard to the income: he can require the trustees to exercise, in bona fide, their discretion as to how it shall be distributed, and he can take and enjoy whatever part of the income the trustees choose to give to him.'") (quoting *Gartside and Another and Inland Revenue Commissioners* [1968] A.C. 553 at 606); *Gartside*, [1968] A.C. 553 at 607 (". . . a right to require trustees to consider whether they will pay you something does not enable you to claim anything. If the trustees do decide to pay you something, you do not get it by reason of having the right to have your case considered: you get it only because the trustees have decided to give it to you"); *Tan Chi Fang et al. v. HM Attorney General* [2014] JRC 128 ¶ 26 ("In our judgment, it is clear and abundantly well-established law

---

[10] Dr. Maynard explained that "[t]he Bahamas has retained and continues to apply the English common law, as provided for in Section 2 of the Bahamian Declaratory Act, subject to Bahamian Statutes and legal decisions of the Bahamian Courts in settling disputes." *Id.* at 5, § E.2 (footnote omitted); *see also Nineveh*, 2019 WL 3816834, at *6 ("Bahamian law will follow English common law unless it has been modified by statute.") (internal quotations omitted).

that a beneficiary of a discretionary trust has no 'entitlement' to any of the trust property. His sole right is to be considered as a potential recipient of benefit by the trustee and he also has a right to have his interest protected by a court of equity[.]"); *Peter Michael Hunt v. Raffaele and Josephine Muollo*, CA205/02 ¶ 11 ("An ordinary discretionary beneficiary has no interest, legal or equitable, in the assets of the trust . . . . It is only on the making of a distribution to the discretionary beneficiary that the beneficiary obtains any interest in property, and then only to the extent of the distribution.") (citations omitted). This is true even if a beneficiary is the settlor of a trust. *Tan Chi Fang*, [2014] JRC 128 ¶ 33 ("[T]here is no difference as a matter of law between the position of one discretionary beneficiary and another. The fact that one may be the settlor does not make his legal position different[.]").[11]

Notably, in another federal district court action in which it was a party, the Government <u>agreed</u> with this understanding of Bahamian law:

> The parties agree that under Bahamian law, "discretionary beneficiaries, even those who are also settlors like Kaplan, do not have any proprietary interest in a trust's assets." U.S. Mem. C.O.L. 9. This position is consistent with United States law. *See N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.*, 139 S. Ct. 2213, 2223 (2019) (holding discretionary beneficiaries had no property interest in trust assets). Thus, Kaplan's status as a discretionary beneficiary does not create an attachable property interest in the Trust under Bahamian law.

*Nineveh*, 2019 WL 3816834, at *5.[12]

---

[11] Copies of the *Gartside*, *Hunt*, and *Tan Chi Fang* decisions were attached collectively to Equity's own Motion for Summary Judgment as **Exhibit 8**. *See* Dkt. No. 81-8.

[12] Because, under Bahamian law, a discretionary beneficiary does not have a property interest in trust assets regardless of whether he or she is the settlor, the Government's argument that Kroner is the settlor of the 2007 Trust is irrelevant. Dkt. No. 76, Gov. SJ Motion at 12-13.

> c)   *As the Beneficiary of Discretionary Trusts, Kroner Does Not Have a Property Interest in the Assets of the 2004 or 2007 Trusts*

The provisions of the 2004 and 2007 Trusts make clear—and the Government does not dispute—that both are discretionary trusts. Article IV.A of the 2004 Trust expressly states: "This is a discretionary trust and, except as otherwise provided herein, no Beneficiary hereunder has any ascertainable right, title, or interest to any portion of the Trust Estate, whether determined actuarially or otherwise; and the trustees have the discretion to completely withhold distributions from any one Beneficiary." Dkt. No. 81-1, 2004 Trust Deed at 5, Article IV.A; *see also id.* at 5, Article IV.B ("During the Trust Period, the income of the Trust Estate may be paid to or applied for the benefit of any Beneficiary hereof as the Trustees deem desirable in their absolute and unrestricted discretion.").

The 2007 Trust Deed similarly provides that it is a discretionary trust:

> 35. Exercise of Trustees' discretions. . . . The Trustees shall exercise the discretions (each of which shall subject to any provision to the contrary contained herein be absolute) and powers vested in them as they shall think fit for the benefit of all or any of the Beneficiaries and may exercise (or refrain from exercising) any discretion or power for the benefit of any of them without being obliged to consider the interests of the others. Every decision and action of the Trustees whether actually made or taken in writing or implied from the acts of the trustees shall be conclusive and binding on all the Beneficiaries if made or taken in good faith. . . .

Dkt. No. 81-4, 2007 Trust Deed, Appendix at 27, Part II ¶ 35.

Indeed, the Government expressly admits in its Complaint that both Trusts are discretionary. Dkt. No. 1, Compl. ¶ 37 ("The 2004 Trust is also a discretionary trust. Equity, as the trustee, exercises discretion over distributions to the 2004 Trust beneficiaries."); *id.* ¶ 46 ("The 2007 Trust is also a discretionary trust. Equity, as the trustee, exercises discretion over distributions to the 2007 Trust beneficiaries.").

Because the 2004 and 2007 Trusts are discretionary, Kroner's rights as a beneficiary are limited to what he might receive in distributions only, and he does not have any rights to, or property interest in, the Trust assets themselves.[13]

### 3. The Government's Federal Tax Liens Do Not Attach to the Trusts' Assets, But Are Instead Limited to Distributions to Kroner

Applying the second part of the *Craft/Drye/Bess* analysis, the federal tax liens against Kroner do not attach to Trust assets, but only to distributions that have actually been received byKroner. In fact, the cases the Government cites on page 6 of its actually support Equity's position. In *First Nw. Tr. Co. of S. Dakota v. Internal Revenue Serv.*, the Court acknowledged that "'[i]f the taxpayer's rights are subject to the discretion of the trustee, the tax collector can reach whatever the trustee elects to distribute.'" 622 F.2d 387, 390 (8th Cir. 1980) (quoting Plumb, Federal Liens and Priorities Agenda for the Next Decade II, 77 Yale L.J. 605, 617 (1968)).[14]

In another decision cited by the Government, *United States v. Dallas Nat. Bank*, the court found that the taxpayer's interests in the trust corpus "are sufficient . . . to test the question of whether or not [that interest] is subject to a lien," but did not hold that the trust corpus itself was subject to a tax lien. 152 F.2d 582, 586 (5th Cir. 1945). In fact, a later bankruptcy decision distinguished the distributions at issue in *Dallas Nat. Bank* from those made from a discretionary

---

[13] Because Bahamian law establishes the nature of Kroner's property interest in the Trusts, the Government's arguments concerning what that property interest would be under Florida law are irrelevant. *See, e.g.*, Dkt. No. 76, Gov. SJ Motion at 13 (arguing that the spendthrift clauses in the 2004 and 2007 Trust Deeds "do not prevent collection of the Bahamas Trusts under Florida law"); *id.* at 14 (arguing that that "a settlor-beneficiary's interest in discretionary trusts may be collected by the IRS under Florida law").

[14] The Government also relies on *In re Orr*, 180 F.3d 656, 663 (5th Cir. 1999), for the proposition that a spendthrift trust cannot overcome a beneficiary's obligation to pay tax. Dkt. No. 76, SJ Motion at 14. *Orr*, however, also supports Equity's argument, because in that case the Fifth Circuit held that, under Texas law, the federal tax lien applies only to *future distributions* made to the beneficiary. 180 F.3d at 659-664.

trust, finding that the distributions in *Dallas Nat. Bank* "were *mandatory* disbursements made from the net revenues generated from property located between Akard and Stone Streets in Dallas, Texas. The court held that *after* they became payable to the beneficiary, the distributions were property subject to lien and levy by the IRS for unpaid taxes." *Wilson*, 140 B.R. at 405 (emphasis in original). The *Wilson* court recognized that "[w]here discretionary trusts are involved, the beneficiary has no right to trust income until the trustee elects to irrevocably and unconditionally place it in the beneficiary's control." *Id.* at 404 (citation omitted). The court therefore ultimately concluded as follows:

> At this time there is no property to which an IRS lien may attach. The Debtor/Beneficiary cannot compel distributions. Therefore there will be no property in the future against which the IRS may place a lien. The IRS must await a distribution from the Trustee. The Debtor/Beneficiary will not have an interest subject to an IRC § 6321 lien until the Trustee elects to irrevocably and unconditionally place the funds under her control. . . . Therefore, the IRS's action will be proper only against the Debtor/Beneficiary once the funds are in her hands, not against the Trustee or the Huval Trust.

*Id.* at 407 (internal citation and footnote omitted); *id.* at 404-05 ("The IRS asserts that it can compel the Trustee to disburse funds to the Debtor/Beneficiary. The court finds it cannot. Courts are limited in their powers over the trustee of a discretionary trust. No interference is allowed with a trustee regarding the exercise of his discretionary powers unless abuse of that discretion is plead and proven.") (citation omitted).

This reasoning is consistent with the United States Supreme Court's conclusion with respect to when a state may tax trust income. In *North Carolina Department of Revenue v. The Kimberley Rice Kaestner 1992 Family Trust*, the Court held that "the presence of in-state beneficiaries alone does not empower a State to tax trust income that has not been distributed to the beneficiaries where the beneficiaries have no right to demand that income and are uncertain

ever to receive it." 588 U.S. 262, 270 (2019). By contrast, the Court noted that "States may tax trust income that is actually distributed to an in-state beneficiary. In those circumstances, the beneficiary 'own[s] and enjoy[s]' an interest in the trust property, and the State can exact a tax in exchange for offering the beneficiary protection." *Id.* at 272 (citations omitted).

In sum, Kroner is only a discretionary beneficiary who does not have any right to assets held by the 2004 Trust or 2007 Trust. Rather, Kroner has only the right to request distributions from the Trusts, which Equity, as Trustee, may grant or deny in its sole discretion. If Equity makes such distributions to Kroner, then the Government's liens to satisfy his tax debts may attach to those distributions after they are made, but at no time will the tax liens apply to any Trust property that has not been distributed. Therefore, the Government's Motion should be denied in its entirety.[15]

**D.    The Government's Public Policy Concerns Are Unfounded**

Because the outcome of this case is dictated by Bahamian and federal law under *Craft/Drye/Bess*, the Government's arguments relating to Florida's purported public policy are of no import. Nevertheless, because the Government attempts to bolster its Motion with unfounded allegations of impropriety regarding the Trusts—arguing that Kroner "unlawfully shielded [assets] from the IRS for nearly 15 years" and "has millions stashed offshore in the Bahamas Trusts"—

---

[15] In the final two sections of its Motion, the Government argues that affirmative defenses raised by the Kroner Defendants and Equity are inapplicable. Dkt. No. 76, Gov. SJ Motion at 16-20. The Government also contends that certain of the affirmative defenses raised in Equity's Answer to the Complaint are not actually "affirmative." *See, e.g.*, *id.* at 18 ("Second, Equity argues that the United States' claims may be barred by the terms of the 2004 and 2007 Trusts. But this 'affirmative defense' just points to a defect in our prima facie case, it is not an affirmative defense."). However, this Opposition makes clear that the Government's Motion must be denied because, under Bahamian law, Kroner does not have a property interest in the Trust assets that would enable the Government to seize those assets to satisfy his tax debts. This is a defect in the Government's prima facie case, and the Court need not consider any of the affirmative defenses raised by any party to reach this conclusion.

Equity explains herein why there is nothing remotely troubling about the outcome of this case that should offend any public policy.

First, the Government's "public policy" arguments all concern Florida's preferred policy. But not only is Florida law inapplicable for all the reasons set forth above, it is also important to emphasize that Florida does actually has no interest in this matter. This action is pending in <u>federal</u> court with federal question jurisdiction premised on <u>federal</u> statutes (not diversity) and concerns <u>federal</u> tax liens. Regardless of whether the Government prevails on its claims, Florida will neither gain nor be deprived of any benefit.[16]

Second, there is no evidence that either the 2004 or 2007 Trusts were created to avoid Kroner's tax debts. To the contrary, as paragraph 15 of the Government's own Complaint alleges, the IRS did not issue its Notice of Deficiency for the tax debts at issue until July 10, 2014—<u>ten years</u> after the 2004 Trust was created and <u>seven years</u> after the 2007 Trust was created.[17]

Third, there is no evidence, or even any allegation, that the Trustee or beneficiaries have failed to comply with the Trust Deeds or Bahamian law, that they abused or misused the Trusts in any way, or that Kroner has exerted some sort of undue control over the Trustee or the Trusts. Moreover, the Trusts are both irrevocable. *See* Equity's Response to Statement of Material Facts

---

[16] Florida's only connection is that Kroner lives there, but that is not where the property interest was created. Surely, if Kroner moved to some other state, the Government would not then contend that the other state's laws should govern this matter.

[17] The 2020 Tax Court opinion states that the IRS started its investigation in 2011, *Kroner v. Commissioner of Internal Revenue*, 2020 WL 2844537, at *2 (U.S. Tax Ct. 2020), while the Eleventh Circuit opinion states that it started in 2008. *Kroner v. Commissioner of Internal Revenue*, 48 F.4th 1272, 1275 (2022). It appears from both opinions that the IRS representative first met with Mr. Kroner's representatives on August 6, 2012. *See* 2020 WL 2844537, at *2; 48 F.4th at 1275. Each of these years/dates are likewise subsequent to the creation of both Trusts. Thus, there is no evidence in the record to support the Government's suggestion that in some effort to avoid a known liability, Kroner "stashed" his money offshore to "unlawfully shield[]" it from the IRS.

¶ 47. This further demonstrates that there is nothing Kroner can do to gain control over the assets or compel distributions to himself.[18]

Finally, and perhaps most importantly, Kroner is not unfairly profiting at the expense of the Government. Under *Craft*/*Drye*/*Bess*, for so long as the tax liens remain in effect, the Government will effectively step into Kroner's shoes and be permitted to apply those liens to any distributions he receives from the Trusts. In this way, Kroner will either: (i) receive nothing from the Trusts; or (ii) be forced to contend with the fact that, unless and until his tax debts are satisfied, the Government will have a claim to any distributions he might receive from the Trusts. In neither case is Kroner "unlawfully shield[ing]" anything, because he will not receive any benefit that would not be subject to the Government's liens.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Equity respectfully requests that the Court deny the Government's Motion and enter an Order in the form attached herewith.

Date: <u>March 13, 2026</u>                                   Respectfully submitted,

*/s/Michael R. Esposito*
**BLANK ROME LLP**
Michael Esposito
Florida Bar No. 37457
E-mail: Michael.Esposito@BlankRome.com
100 S. Ashley Drive, Suite 600
Tampa, Florida 33602
Phone: (813) 255-2324
Fax: (813) 433-5352

---

[18] On this point, even though Florida law does not apply to this action, Equity notes that in several of the decisions the Government relies upon, the settlor exerted excessive control over the trust's assets – an issue not even alleged in this case. *See, e.g.*, *In re Lawrence*, 251 B.R. at 635, 638 n.5 (in which the court found that the settlor could remove and replace the trustee of an offshore trust for any reason, and the trust at issue was set up two months before a $20.4 million award was rendered against the settlor); *Barbee*, 2006 U.S. Dist. LEXIS 82945 at *20 (in which the court denied a motion to dismiss, in part, because there was a factual question as to whether the settlor controlled the trust).

*Counsel for Defendant Equity Trust*
*Bahamas, LTD in its capacity as the trustee*
*of the Kroner Family Trust 2004 and Kroner*
*Family 2007 Trust Settlement B*

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Local Rule 7.1(b)(2), Defendant Equity Trust Bahamas, LTD ("Equity") respectfully requests oral argument on Plaintiff's Motion for Summary Judgment. Equity believes oral argument will help explain and narrow the key issues the Court will need to consider when resolving the Motion. Equity estimates that argument would take one hour, with half an hour each being allotted to Equity and Plaintiff.

Respectfully submitted,

**BLANK ROME LLP**

By: <u>/s/Michael R. Esposito</u>
Michael Esposito

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on March 13, 2026, with the Clerk of the Court by using the CM/ECF System. I also certify that the foregoing document is being served this day on all counsel of record via transmission of the Notice of Electronic Filing generated by CM/ECF.

*/s/Michael R. Esposito*
Michael Esposito
Florida Bar No. 37457
